WILLIAMS, Appellant,

v.

SOUTHERN OHIO CORRECTIONAL FACILITY, Appellee.

[Cite as *Williams v. Southern Ohio Correctional Facility* (1990), 67 Ohio App.3d 517.]

Court of Appeals of Ohio,
Franklin County.

No. 89AP–1411.

Decided May 1, 1990.

518

*Lewis Williams, Jr., pro se.*

*Anthony J. Celebrezze, Jr.,* Attorney General, and *Velda K. Hofacker,* for appellee.

McCORMAC, Judge.

Plaintiff-appellant, Lewis Williams, Jr., appeals from the judgment of the Ohio Court of Claims dismissing his negligence action against defendant-appellee, Southern Ohio Correctional Facility. Appellant's complaint alleges that appellee negligently supervised another prisoner, Charles Lorraine, and as a result appellant was injured.

Appellant is an inmate incarcerated at the Southern Ohio Correctional Facility pursuant to R.C. 5120.16. Charles Lorraine is also an inmate at that same facility. Both are housed in cell block K–4, death row. Sometime in late March 1988, Lorraine "bombed out" appellant's cell as part of an ongoing dispute between the two inmates. "Bombing out" entails collecting human waste in a container and flinging it into another's cell. Lorraine received a conduct report and served time in disciplinary control for his action. Appellant retaliated several days later by taking several items from Lorraine's cell. The following day, the two engaged in a shouting match which resulted in disciplinary action against appellant.

On April 22, 1988, Lorraine was working as the range porter for cells one through twenty in block K–4. The range porter is responsible for delivering meals to his assigned cells, as well as other related duties, and is free to roam the range within his assigned area. Lorraine's appointment to this position was aided by a "kite" sent to prison officials by appellant, wherein he stated that:

" * * * Not too long ago [Lorraine] threw human waste in my cell and in my face, but I believe he will be a good porter because he now has work on his mind and he's not idle."

While performing his duties, Lorraine approached appellant's cell, the two began shouting and eventually they attempted to strike each other through the locked cell bars. Appellant contends that, as a result of the fisticuffs, he was poked in the eye by Lorraine and sustained injury. Appellant admitted that he was surprised by the encounter with Lorraine and conceded that he could have retreated further into his cell to avoid the incident.

■ Prior to ruling on appellant's assignments of error, we are first presented with a preliminary matter which must be determined. Appellant has filed with this court a request for a writ of procedendo seeking an order compelling the trial court to act upon appellant's proposed statement of the evidence filed on January 4, 1990, pursuant to App.R. 9(C). A writ of procedendo is a writ of extraordinary nature which will not be granted unless there is a clear legal right to the relief sought. *State, ex rel. Smith, v. Friedman* (1970), 22 Ohio St.2d 25, 51 O.O.2d 41, 257 N.E.2d 386. For the reasons that follow, we conclude that appellant has failed to demonstrate a clear legal right to the relief prayed for and therefore deny his requested writ.

Appellant filed his notice of appeal with the Court of Claims on November 28, 1989. At that time, he did not request that a transcript be prepared as mandated by App.R. 10(A). Believing that no transcript was necessary, the Clerk of the Court of Claims transmitted the record to this court on November 30, 1989. To correct his error, on December 22, appellant filed a request with the trial court to prepare and transmit a transcript of the proceedings at state expense. While there is no entry in the record showing whether appellant's request was granted, the state is not required to absorb the cost of the transcript in this action. Therefore, the lack of an entry is harmless. See *State, ex rel. Heller, v. Miller* (1980), 61 Ohio St.2d 6, 15 O.O.3d 3, 399 N.E.2d 66.

On January 4, 1990, appellant then filed what he termed a "request to file statement of the evidence." While it is unclear from the record whether appellant actually submitted an App.R. 9(C) statement with his request, we will assume from appellee's motion to strike that he did. App.R. 9(C) provides

for, and controls the use of, the statement of the evidence. In part, App.R. 9(C) provides:

" * * * If no report of the evidence or proceedings at a hearing or trial was made, or if a transcript is unavailable, the appellant may prepare a statement of the evidence or proceedings from the best available means, including his recollection. The statement shall be served on the appellee no later than twenty days prior to the time for transmission of the record pursuant to Rule 10, who may serve objections or proposed amendments thereto within ten days after service. Thereupon, the statement and any objections or proposed amendments shall be forthwith submitted to the trial court for settlement and approval. The trial court shall act thereon prior to the time for transmission of the record pursuant to Rule 10, and, as settled and approved, the statement shall be included by the clerk of the trial court in the record on appeal."

Since no transcript was requested in appellant's notice of appeal, the time for transmission of the record was as soon as possible. Therefore, appellant was untimely in submitting his App.R. 9(C) statement, in that it was filed thirty-five days after the record was transmitted. Even if the forty-day requirement from App.R. 10 is used, the latest date the record could have been transmitted was January 8, 1990, making December 19, 1990 the cut-off date for appellant to serve his proposal on appellee. Under either timetable, appellant has failed to comply with App.R. 9(C).

Additionally, even if we permit the record to be supplemented with an App.R. 9(C) statement that recites the facts in a light most favorable to appellant, he would still not be able to prove his case under a negligence theory, as we will discuss later. Therefore, appellant does not have a clear legal right to the relief sought and, accordingly, his writ of procedendo is denied. Since appellant's writ is denied and based upon our determination that his App.R. 9(C) statement is not properly before the trial court, it is unnecessary to rule on appellee's motion to strike.

As to the merits of appellant's appeal, he has advanced the following assignments of error:

"I. The trial court erred to the prejudice of the appellant in overruling his memorandum contra appellee's motion to take inmate's deposition after the discovery cutoff.

"II. The trial court erred and abused its discretion in denying appellant the right to show prejudice at the trial, even upon appellant's requests, why appellee's motion to quash subpoena and/or in limine should not be granted [*sic*].

"III. It was prejudicial error and an abuse of discretion for the trial court to exclude the testimony of appellant's state employed witnesses for failure, per se, to supplement his answer to appellee's interrogatory, absent finding of willful non-compliance, bad-faith, or unfair surprise, where defendant appellee was made aware of witnesses' identity 30 days prior to trial and had deposed plaintiff appellant two weeks prior to trial becoming more fully aware of the expected testimony of the witnesses.

"IV. (A) The trial court erred and abused its discretion in refusing to allow appellant to examine nurse John Mitchell, appellant's witness, on relevant evidence of bias and personal interest, thereby depriving appellant of his right to a fair trial and due course/process of law.

"(B) The trial court improperly allowed appellee to elicit prejudicial hearsay testimony from nurse John Mitchell, appellant's witness, on cross-examination.

"(C) The trial court erred and abused its discretion in restricting the scope of cross-examination of Oscar McGraw, appellee's only witness, thereby denying appellant of a fair trial and due course/process of law.

"V. The trial court erred and abused its discretion in failing to consider legally sufficient evidence of actual written notice of impending assault between plaintiff-appellant and another inmate.

"VI. (A) The trial court erred and abused its discretion in excluding appellant's rebuttal evidence, appellant's exhibits 30, 31, 32, 33, and 16.

"(B) The trial court erred and abused its discretion in excluding appellant's exhibits 15, 17, 18 and 34.

"VII. The judgment is against the manifest weight of the evidence and contrary to law.

"VIII. The trial court erred to the prejudice of the appellant in finding contributory negligence where there is no evidence to support the issue.

"IX. The trial court erred to the prejudice of the appellant in failing to find that Ohio Revised Code, Section 2921.44(C)(3) and (5), creates a safe controlled environment in which the appellant is not permitted either expressly or by implication to assume the risk of another inmate assault by the same inmate following the first assault.

"X. (A) The trial court erred to the prejudice of the appellant in failing to find that the failure of appellee to afford appellant the right to be heard by the Death Row Classification Committee on disciplinary referral containing written notice of impending assault before said committee assigned inmate to be prevented from assaulting appellant, as range porter on same range where appellant locked [*sic*] is negligence in the administration of Ohio Administra-

tive Code, regulation 5120–9–53 in violation of Ohio Revised Code, Section 2921.44(C)(5) and proximate cause of appellant's injury.

"(B) The trial court erred to the prejudice of the appellant in failing to determine issue of whether appellee negligently failed to prevent the intimidation of appellant by another inmate in violation of Ohio Revised Code, Section 2921.44(C)(3), and proximately caused injury to appellant."

In his first assignment of error, appellant contends that the trial court erred by permitting appellee to take his deposition after the court imposed a cut-off date. As part of its pretrial orders, the court set a trial date of August 30, and a discovery cut-off date of July 25. Thereafter, appellee filed a motion to take appellant's deposition after the cut-off date which was opposed by appellant.

The regulation of discovery is committed to the sound discretion of the trial court. Decisions regarding discovery timing will not be overturned by a reviewing court absent an abuse of discretion. *Rossman v. Rossman* (1975), 47 Ohio App.2d 103, 1 O.O.3d 206, 352 N.E.2d 149. In the instant action, the taking of the complainant's deposition by the defendant was a proper method of limiting the issues and avoiding surprise, two of the primary purposes of discovery. Furthermore, appellant has failed to show that he was in any way prejudiced by the trial court's decision. The bare allegation contained in his affidavit that he would be prejudiced is insufficient for appellant to demonstrate that the trial court was unreasonable or arbitrary in its decision. Specific examples of prejudice must be cited.

Appellant's first assignment of error is overruled.

Appellant's second and third assignments of error are interrelated and will be discussed together. The single issue presented is whether the trial court erred when it quashed the subpoenas of seven of appellant's witnesses for appellant's failure to supplement interrogatory responses. Appellee submitted interrogatories to appellant requesting the names of witnesses he intended to call at trial. Appellant responded but, prior to trial, requested subpoenas be issued to several witnesses not identified in his interrogatory responses. At no time did appellant provide supplemental responses to his interrogatory questions.

Civ.R. 37 permits a trial court to impose sanctions for a party's failure to timely respond to interrogatory questions. As the Supreme Court has stated:

"One of the purposes of the Rules of Civil Procedure is to eliminate surprise. This is accomplished by way of a discovery procedure which mandates a free flow of accessible information between the parties upon request, and which imposes sanctions for failure to timely respond to reason-

able inquiries.  * * * " *Jones v. Murphy* (1984), 12 Ohio St.3d 84, at 86, 12 OBR 73, at 75, 465 N.E.2d 444, at 446.

In *Jones,* the court upheld the trial court's decision to exclude testimony of an expert witness not identified by the offering party in discovery requests. In *Paugh & Farmer, Inc. v. Menorah Home for Jewish Aged* (1984), 15 Ohio St.3d 44, 15 OBR 142, 472 N.E.2d 704, the Supreme Court extended the "willful non-compliance" requirement of *Jones* to include the failure to supplement discovery request after a court-imposed discovery deadline had passed. The trial court did not abuse its discretion by quashing appellant's subpoenas and thereby excluding their testimony.

Even if the witnesses were subpoenaed and were permitted to testify, they would have added nothing to appellant's case.  Each witness was a prison official whom appellant wanted to use to establish appellee's prior knowledge of inmate Lorraine's propensity to cause harm to appellant.  However, their testimony either involved incidents so far in the past as to cause serious doubts concerning the probative value of the testimony, or concerned the "bombing out" incident which appellant, by his kite recommending Lorraine for the porter job, admitted was resolved.  Therefore, appellant has failed to show prejudice sufficient to warrant reversal.

█ Appellant's fourth, fifth, and sixth assignments of error all involve evidentiary rulings by the trial court and, as such, will be treated simultaneously.  Initially, it must be noted that, without the aid of a transcript, it is difficult at best to review evidentiary rulings and, therefore, the trial court's actions carry a presumption of regularity.  *Columbus v. Hodge* (1987), 37 Ohio App.3d 68, 523 N.E.2d 515.  Rulings on the admissibility of evidence will not be overturned unless the complaining party can establish that the trial court abused its discretion.

█ Appellant first argues that the trial court erred by not allowing him to conduct a preliminary examination of his own witness to determine the witness's reputation for truthfulness.  Evid.R. 607 and 608 clearly prohibit this type of examination by appellant.  Evid.R. 607 expressly provides that the party may only attack the credibility of his own witness with a prior inconsistent statement when there is a showing of surprise and affirmative damage. Appellant has offered no evidence to establish either.

█ Appellant next argues that he should have been permitted to cross-examine one of appellee's witnesses concerning a separate and distinct case in which the witness was involved.  Even if this testimony could survive the test of relevancy, collateral or extrinsic evidence may not be used to attack the

credibility of a witness. *State v. Cochrane* (1949), 151 Ohio St. 128, 38 O.O. 575, 84 N.E.2d 742.

Appellant also argues that testimony elicited from a nurse called by appellee was inadmissible hearsay. Appellant has failed to point out what part of the nurse's testimony was hearsay and, without a transcript, we are unable to set aside the trial court's ruling.

■ Finally, appellant contends that several exhibits should have been admitted by the trial court to show that he did not retaliate against inmate Lorraine on the date and time of the alleged eye poking. While appellant states that he proffered all nine of the exhibits mentioned, only Exhibit Nos. 16 and 34 have been made a part of the record. Therefore, we must limit our discussion to those documents. Exhibit No. 16 is an affidavit prepared by appellant stating, in essence, that he has been having problems with several of the inmates in cell block K–4 for several years. There is no indication that this affidavit was ever given to prison authorities. Exhibit No. 34 is an "inmate voluntary statement form" concerning appellant's recollections of an encounter between a prison nurse and another inmate not a party to this action. We fail to see how either of these exhibits is in any way relevant to the issue of retaliation. In addition, appellant attempts to interpose retaliation over the primary issue of his own contributory negligence. The issue is not whether appellant struck back but whether he prompted or could have reasonably avoided the confrontation with inmate Lorraine. We are at a loss to find any logical pattern which could make these exhibits relevant to the issue of contributory negligence.

Appellant's fourth, fifth, and sixth assignments of error are overruled.

Appellant's seventh, eighth, and ninth assignments of error, all in various ways, contend that the trial court's decision is against the manifest weight of the evidence. When an appellant fails to provide a transcript of proceedings, " * * * a court has nothing to pass upon and, thus, the court must presume the validity of the lower court's proceedings." *Columbus v. Hodge, supra,* paragraph two of the syllabus. Without a transcript, this court cannot overrule the trial court's decision as being against the manifest weight of the evidence. However, this assignment of error represents the linchpin of appellant's case and magnifies the futility of this entire appeal.

■ Even if this court were to sustain each of appellant's procedural and evidentiary assignments of error, it would still be impossible for appellant to sustain his burden on the essential elements of his claim. Appellant's complaint alleges that appellee was negligent in the supervision of appellant's fellow inmates. In order for appellant's cause of action to succeed, he must

prove that appellee owed him a duty of care, that appellee breached that duty, and that appellee's breach proximately caused his injuries. *Wellman v. East Ohio Gas Co.* (1953), 160 Ohio St. 103, 51 O.O. 27, 113 N.E.2d 629. To establish a breach of duty, appellant must show that the actions giving rise to his injuries were foreseeable by prison officials. Prison officials owe a duty of reasonable care to the inmates under their charge but are not insurers of their safety. *Clemets v. Heston* (1985), 20 Ohio App.3d 132, 20 OBR 166, 485 N.E.2d 287.

■ Construing the evidence most strongly in appellant's favor, no reasonable mind could arrive at the conclusion that appellant's injuries were foreseeable to appellee. Appellant himself admits that Lorraine's attack was a surprise. If it was a surprise to him, how could it be foreseeable to prison officials? Just three days prior to the alleged attack, appellant recommended Lorraine for the job that put him in a position to launch the attack against appellant. The only reasonable inference that could be drawn from appellant's recommendation is that he did not foresee Lorraine as a potential threat at that time.

■ Furthermore, there is more than a small quantum of evidence to establish appellant's contributory negligence. There were locked prison bars separating appellant from Lorraine but appellant choose to put himself within reach of Lorraine and admittedly attempted to strike Lorraine through the bars. When there is competent, credible evidence to support the trial court's decision, an appellate court will not overturn that decision based upon a manifest weight argument. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578.

Appellant's seventh, eighth, and ninth assignments of error are overruled.

In his tenth and final assignment of error, appellant argues that the trial court erred in failing to find that he had a right to be heard by the Death Row Classification Committee. Continuing, appellant contends that he would have objected to Lorraine's appointment as range porter for cell block K–4.

Assuming that appellant can show that procedures established within a penal institution are not characterized by a high degree of official judgment and, thus, avoid the issue of sovereign immunity, his argument is difficult to comprehend in light of his recommendation of Lorraine for the range porter position. See *Reynolds v. State* (1984), 14 Ohio St.3d 68, 14 OBR 506, 471 N.E.2d 776. Appellant admitted that, three days prior to the confrontation at issue, he sent a kite to prison officials suggesting that the range porter job would be good for Lorraine. Now he wants this court to believe that he would have testified differently before the Death Row Classification Commit-

tee. At best, his argument lacks credibility. Therefore, under either sovereign immunity principles, or by the weight of his own admissions, appellant's argument is unpersuasive.

Appellant's tenth assignment of error is overruled.

Appellant's assignments of error are overruled, and the judgment of the Ohio Court of Claims is affirmed.

*Judgment affirmed.*

REILLY, P.J., and KERN, J., concur.

LILLIAN M. KERN, J., retired, of the Montgomery County Common Pleas Court, sitting by assignment.