*This interview is now deteriorating from leading and suggestive to persistently coercive. The sequence of questions rapidly directed at [the child] reflected a demanding quality. In other words, the interviewer was demanding that [the child] answer her questions.*

32:55–33:10—[The child] begins to leave the interview room. The interviewer says, "Help me put the clothes on the baby, then we can go." [The child] initially responds by turning the lights off and on in the interview room.

34:00–35:20—[The child] then pushes her face repeatedly into the groin area of one of the dolls. The interviewer responds by asking, "Who made you do that, did Hubie make you do that?" [The child] does not respond with any clear answer and the tape ends.

*Attributing any significance to [the child's] behavior at this point in the interview is ill-advised. Ultimately, 10 different psychologists could interpret her behavior in 10 different ways. In other words, [the child's] behavior is open to all kinds of suggestive interpretations.*

MILLETTE

v.

OHIO DEPARTMENT OF REHABILITATION AND CORRECTION█

Court of Claims of Ohio.

No. 95–02227.

Decided Dec. 27, 1996.

*Richard F. Swope,* for plaintiff.

*Betty D. Montgomery,* Attorney General, and *Eric A. Walker,* Assistant Attorney General, for defendant.

RUSSELL LEACH, Judge.

The court conducted a bifurcated trial to determine whether defendant, the Ohio Department of Rehabilitation and Correction ("ODRC"), is liable for injuries sustained by plaintiff, Roger Millette, while incarcerated at the Southern Ohio Correctional Facility ("SOCF").

In his complaint, plaintiff alleges that defendant failed to reasonably provide for his safety. Specifically, plaintiff contends that defendant failed to (1) account for tools used in the SOCF shoe shop, (2) provide for plaintiff's safety after becoming aware of threats made against him, (3) control gang activities, (4) confiscate inmate weapons, and (5) enforce SOCF "corridor movement" procedures.

Plaintiff's allegations stem from a series of assaults against him. The first assault occurred on February 23, 1993, while plaintiff was working in the SOCF shoe shop. Early that morning, plaintiff had an argument with fellow inmate Harold Mardis regarding the placement of a shoe rack within the shop area. Due to noise in the shoe shop, Corrections Officer ("C.O.") Roger Rudge and Shop Supervisors, Jerry Waid and David Proehl, did not hear the argument. Later, after lunch, when plaintiff returned to the shop, Mardis stabbed him in his left arm with a tack knife. After being stabbed, plaintiff rushed to a nearby restroom to treat his wound. While in the restroom, Rudge came upon plaintiff, at which time he noticed plaintiff's injury and proceeded to question him. Plaintiff reported that he had fallen on a pair of shears while working in the shop. Rudge then prepared an incident report regarding his conversation with plaintiff. Thereafter, plaintiff was escorted to the infirmary, where he was questioned by Captain John H. Newsome. Plaintiff again represented that he had fallen on a pair of shears. Newsome then contacted Richard Taylor, the shoe shop superintendent, and had him bring a pair of shears to the infirmary. After comparing the shears to his injuries, Newsome determined that plaintiff was not being forthright about the cause of his injury. Thereafter, Newsome instructed plaintiff that he would be punished if he did not tell the truth. Plaintiff eventually told Newsome that Mardis had stabbed him. Plaintiff later testified against Mardis in a Rules Infraction Board ("RIB") hearing. Plaintiff was placed in the security control unit throughout the RIB proceedings. Mardis was found guilty of assault and punished.

After Mardis's RIB hearing and plaintiff's release to the general population, Newsome received information that the February 23, 1993 incident might not be over. Upon receiving this information, Newsome spoke with plaintiff. Plaintiff indicated that he did not feel there was a need for special protection.

On March 13, 1993, approximately two days after his release from security control, plaintiff testified that he was assaulted by three inmates while in the gym. Plaintiff testified that one of the inmates was Thomas Graewe, an alleged associate of Mardis in the Aryan Brotherhood gang. However, plaintiff never notified SOCF officials regarding this assault. In fact, plaintiff testified that he did not inform SOCF officials because he considered it a "pay-back" by the Aryan Brotherhood gang for testifying at Mardis's RIB hearing. Upon receiving

treatment for his injuries at the infirmary, plaintiff signed an "Unusual Incident" report, stating that he had sustained the injuries while playing basketball. After this attack, plaintiff testified that he spoke with the leaders of the Aryan Brotherhood and felt that no further attacks would occur.

Approximately one week later, on March 19, 1993, plaintiff was assaulted by Graewe in the L–6 corridor. At the time of the assault, plaintiff and Graewe celled in L–block. The assault occurred as plaintiff, along with the entire block of inmates, was walking in the L–6 corridor to lunch. Graewe came up from behind and struck plaintiff's face with a homemade razor-blade knife. Upon being struck, plaintiff ran towards the front of the line with Graewe in pursuit. Plaintiff and Graewe were stopped by C.O.s Everett Pallard, Robert Porter, and George Adkins. Plaintiff was taken to the infirmary and eventually treated at an outside hospital. Graewe was cuffed and eventually pleaded guilty to one count of felonious assault.

In order to prevail, plaintiff must prove by a preponderance of the evidence that defendant owed him a duty, that defendant breached that duty, and that defendant's breach proximately caused his injuries. *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 21 O.O.3d 177, 423 N.E.2d 467. Ohio law imposes a duty of reasonable care upon the state to provide for its prisoners' health, care, and well-being. *Clemets v. Heston* (1985), 20 Ohio App.3d 132, 136, 20 OBR 166, 169, 485 N.E.2d 287, 291–292. However, the state is not an insurer of inmate safety. See *Williams v. Ohio Dept. of Rehab. & Corr.* (1991), 61 Ohio Misc.2d 699, 702, 583 N.E.2d 1129, 1132. Accordingly, the question for the court is whether ODRC breached its duty of reasonable care under the circumstances of this case.

The law is well settled in Ohio that the state is not liable for the intentional attack on an inmate by another inmate unless there is adequate notice of an impending assault. See *Baker v. State* (1986), 28 Ohio App.3d 99, 28 OBR 142, 502 N.E.2d 261; *Williams v. S. Ohio Correctional Facility* (1990), 67 Ohio App.3d 517, 587 N.E.2d 870; *Belcher v. Ohio Dept. of Rehab. & Corr.* (1991), 61 Ohio Misc.2d 696, 583 N.E.2d 1128.

■ The court finds that plaintiff failed to prove by a preponderance of the evidence that SOCF officials had actual or constructive notice of an imminent threat of harm against him. Examination of the evidence and testimony offered at trial convinces the court that SOCF officials were not aware of any problems requiring institutional action between plaintiff and inmate Mardis. Plaintiff contends that SOCF failed to properly account for the tools issued to inmates while working in the shoe shop. According to C.O. Rudge, inmates turn in tools prior to going to lunch. Waid testified that there is only one tack knife and that it is issued to the inmate assigned to grind shoes. The record is void regarding

which inmate was issued the tack knife on February 23, 1993. The record is also unclear regarding Mardis's means of procuring the tack knife. Therefore, based upon such a lack of clarity in the record, the court is unable to find that plaintiff met his burden of proof on this issue.

Additionally, plaintiff argues that SOCF officials knew of a contract on plaintiff's life. The court finds that plaintiff failed to prove such contention by a preponderance of the evidence. Newsome testified that he spoke with plaintiff regarding rumors of threats to his safety. Plaintiff declined protective custody because he felt that he had resolved any further problems he might have had with the Aryan Brotherhood. Newsome had authority to place inmates in protective control, but he did not do so because plaintiff did not feel in danger. The court finds that SOCF officials, including Newsome, acted reasonably under the circumstances.

Plaintiff also contends that SOCF officials were negligent for failing to lock up gang members. Plaintiff contends that the assaults against him were orchestrated by the Aryan Brotherhood gang because he celled with a black inmate and was considered a snitch for testifying against Mardis in the RIB hearing. Plaintiff argues that Newsome coerced him to testify at the RIB hearing, thus placing him in a vulnerable position. The court does not concur with plaintiff's argument. The court acknowledges that prison officials are responsible to operate penal institutions in a manner necessary to provide security to the public and inmates. The evidence does not support a finding that prison officials jeopardized plaintiff's safety. In fact, Newsome met with plaintiff regarding his safety. By his own testimony, plaintiff declined any protection. The court finds that SOCF officials did not negligently act upon information regarding threats by gangs against plaintiff.

The court finds the record devoid of evidence regarding plaintiff's allegations premised upon inmate weapons. It is common knowledge that prisons are inherently dangerous. The weapon used by Graewe upon plaintiff was made of cardboard, toothpaste, and "Bic" razors—items commonly issued to inmates—and a piece of a bedspring. ODRC owes a duty of reasonable care to plaintiff to provide for his health, care, and well-being. *Clemets, supra.* However, based upon the circumstances of this case, to find ODRC liable for Graewe's possession of the weapon would render the state an insurer of an inmate's safety in contravention of settled law. *Williams v. S. Ohio Correctional Facility, supra.* The court finds that plaintiff failed to prove by a preponderance of the evidence that SOCF had actual or constructive notice that Graewe possessed the weapon.

Last, plaintiff contends that SOCF was negligent in monitoring inmate movements in the L–6 corridor. Plaintiff offered Exhibit 5, a memorandum on

the subject of "corridor movement" dated August 23, 1990, which set forth procedures regarding inmate movements at SOCF. According to the procedure, corrections officers are to maintain all inmate movements to the right of the yellow line nearest to the wall. Plaintiff contends that Graewe crossed the yellow line when he assaulted him. A review of the evidence reveals that on March 19, 1993, SOCF had three corrections officers monitoring the movements in the L–6 corridor. The court finds that the record is short of evidence or expert witness testimony indicating that SOCF negligently supervised the L–Block corridor or L–6 corridor movements. Prisons are inherently dangerous. To hold the state liable for every attack upon an inmate without sufficient notice would render the state an insurer of inmates' safety. See *Williams v. S. Ohio Correctional Facility, supra.* The court is not so inclined.

Based upon the totality of the evidence, the court finds that plaintiff failed to prove by a preponderance of the evidence those claims asserted against defendant. The court hereby renders judgment in favor of defendant and against plaintiff.

*Judgment for defendant.*

RUSSELL LEACH, J., retired, of the Franklin County Municipal Court, sitting by assignment.