WOODS, Appellant,

v.

OHIO DEPARTMENT OF REHABILITATION AND CORRECTION, Appellee.

[Cite as *Woods v. Ohio Dept. of Rehab. & Corr.* (1999), 132 Ohio App.3d 780.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 98AP–695.

Decided March 16, 1999.

*Steve J. Edwards,* for appellant.

*Betty D. Montgomery,* Attorney General, and *Michael J. Valentine,* Assistant Attorney General, for appellee.

---

TYACK, Judge.

On January 6, 1997, Nute Woods, an inmate at the Madison Correctional Institute, filed a complaint in the Ohio Court of Claims against the Ohio Department of Rehabilitation and Correction ("DRC"). Woods alleged DRC was negligent in transporting him to a work site. The issues of liability and damages were bifurcated, and, on December 4, 1997, a trial was held on the issue of liability.

On May 27, 1998, the trial court rendered a decision finding that DRC was not negligent and did not violate any statute. A judgment entry was journalized the same day.

Woods has appealed to this court, assigning the following error for our consideration:

"The trial court committed error in holding that Plaintiff–Appellant failed to prove by a preponderance of the evidence that Defendant–Appellee breached the duty owed to him."

Appellant has essentially set forth two arguments against the trial court's decision. Appellant contends the trial court erred in failing to find that (1) DRC violated certain statutory provisions or administrative rules and was, therefore, negligent *per se,* and (2) appellee failed to meet the standard of care.

Appellant was injured when he fell off a milk crate that he was sitting on in the back of a cargo van. Appellant was an inmate at the Madison Correctional Institute ("Madison") and worked as a crew member on the asbestos abatement program. On the day he was injured, appellant and other inmates on the crew were being transported from Madison to the nearby London Correctional Institution to work.

As a general matter, in order to recover on a negligence claim, a plaintiff must prove that (1) the defendant owed the plaintiff a duty, (2) the

defendant breached that duty, and (3) the breach proximately caused the plaintiff's injury. *Chambers v. St. Mary's School* (1998), 82 Ohio St.3d 563, 565, 697 N.E.2d 198. If a positive and definite standard of care has been established by the legislature whereby a jury may determine whether there has been a violation thereof by finding a single issue of fact, then a violation constitutes negligence *per se. Id.* Negligence *per se* means that the plaintiff has conclusively established that the defendant breached the duty owed to the plaintiff. *Id.*

■ Here, appellant contended appellee violated Ohio Adm.Code 4501:2–1–19, an administrative rule that, in essence, prohibits a vehicle from having protruding objects that would be dangerous to a person coming into contact therewith. Appellant also contended appellee violated its Safety and Health Manual. However, the Supreme Court in *Chambers* held that violation of an administrative rule does not constitute negligence *per se* but that such a violation may be admissible as evidence of negligence. *Id.* at syllabus. The same analysis used in *Chambers* as to why an administrative rule is not like a legislative enactment applies equally to an internal manual. *Id.* at 566–568, 697 N.E.2d at 201. Therefore, we conclude that a violation of such a manual would also not constitute negligence *per se.*

Appellant next contends appellee violated R.C. 4513.02(A), which states:

■ "No person shall drive or move, or cause or knowingly permit to be driven or moved, on any highway any vehicle or combination of vehicles which is in such unsafe condition as to endanger any person."

However, we agree with the Sixth and Ninth District Courts of Appeals which found R.C. 4513.02(A) is a general duty statute to which negligence *per se* is inapplicable. See *Masterson v. Kerzan* (Mar. 31, 1995), Wood App. No. WD–94–066, unreported, at 8, 1995 WL 136449; *Spence v. Oberlin Laundry & Dry Cleaners, Inc.* (Oct. 7, 1998) Lorain App. No. 97CA–006913, unreported, at 11, 1998 WL 696849. Such decisions are in line with the principle set forth in *Chambers* that where a jury must determine the negligence or lack of negligence of a party charged with violation of a statute from consideration and evaluation of multiple facts and circumstances and by applying the standard of care of a reasonable person, negligence *per se* is inapplicable. *Chambers, supra,* 82 Ohio St.3d at 565, 697 N.E.2d at 200–201.

R.C. 4513.02(A) clearly does not establish a positive and definite standard of care such that a jury could determine a violation of R.C. 4513.02(A) by the finding of a single issue of fact. See *Chambers* at 565, 697 N.E.2d at 200–201. Rather, the duty set forth in R.C. 4513.02(A) is undefined, and a jury would have to apply general negligence principles in determining whether or not R.C. 4513.02(A) was

violated. Therefore, negligence *per se* is inapplicable to an alleged violation of R.C. 4513.02(A).

 Next, appellant alleged that appellee violated R.C. 4513.263(B)(2), which states:

"(B) No person shall do any of the following:

" * * *

"(2) Operate an automobile on any street or highway unless each passenger in the automobile *who is subject to the requirement set forth in division (B)(3)* of this section is wearing all of the available elements of a properly adjusted occupant restraining device[.]" (Emphasis added.)

A person subject to the requirement in R.C. 4513.263(B)(3) is a front seat passenger; therefore, the requirement in R.C. 4513.263(B)(2) applies only to front seat passengers. Here, appellant was not a front seat passenger and, therefore, no violation of R.C. 4513.263(B)(2) by appellee could have been found.

 Finally, appellant contended appellee violated R.C. 4511.51(E), which states:

"No driver of a truck, trailer, or semitrailer shall knowingly permit any person who has not attained the age of sixteen years to ride in the unenclosed or unroofed cargo storage area of his vehicle if the vehicle is traveling faster than twenty-five miles per hour * * *[.]"

Appellant was over the age of sixteen at the time of the incident in question and, therefore, there was no violation of R.C. 4511.51(E).

Given all of the above, the trial court did not err in concluding that appellee did not violate any statute, that certain statutes or rules were inapplicable, and that appellee was not negligent *per se.*

 We now turn to an analysis under general principles of negligence. As a general matter, prison officials owe the duty of reasonable care to inmates; however, they are not insurers of inmates' safety. *Williams v. S. Ohio Corr. Facility* (1990), 67 Ohio App.3d 517, 526, 587 N.E.2d 870, 876. The standard of care is that which is reasonable and ordinary for the health, care and well-being of the inmate. *Clemets v. Heston* (1985), 20 Ohio App.3d 132, 136, 20 OBR 166, 169–170, 485 N.E.2d 287, 291–292. Appellee is under a duty to protect its inmates against those unreasonable risks of physical harm associated with the performance of inmates' duties. See *Boyle v. Ohio Dept. of Rehab. & Corr.* (1990), 70 Ohio App.3d 590, 592, 591 N.E.2d 832, 833.

Appellant asserts the trial court's decision as to negligence is against the manifest weight of the evidence. Judgments supported by some competent,

credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus.

As indicated above, appellant was employed as a crew member with the asbestos abatement program. At the time of the incident in question, appellant had been living at Madison and working at London Correctional Institution ("London"), which was approximately one-quarter mile to two miles from Madison on State Route 56. On the day in question, March 22, 1994, the crew members were being transported to London in a 1984 Ford Econoline van. Armondo Tavizon was appellee's employee, supervised the inmate crew including appellant, and drove the van in question.

Normally, this van was not used to transport inmates; it was usually used to haul equipment. However, appellee had become short one transport van, vehicles had been shifted around, and someone else needed the van normally driven by Tavizon. Prior to March 22, 1994, the van had been used by the same crew for at least one week.

The van had a driver's seat and a passenger seat in front and a bench seat in the back cargo area that was able to seat two to three people. Hence, at the most, the van could seat five people. On the day in question, however, there were seven to nine people in the van.

Appellant testified that because of the lack of seating, some crew members had to sit on the wheel wells, "rolls of poly" or a milk crate. Appellant usually sat on a wheel well on previous occasions; however, someone was already on it the day in question. Indeed, James Ray, Jr., another inmate on the crew that day, testified that he sat on the wheel well.

Appellant testified that when he got into the van that day, all the seats were taken. Appellant stated that he could not have sat on the floor because the back of the van was crowded with people and equipment. Tavizon testified that the van had boxes of material, crates and tools in the back and that it was a "pretty congested area." Appellant sat on a plastic crate because "that was what was in front of me when I got there * * *." Appellant had never sat on the crate prior to this day. The milk crate was on the floor of the van, and the van floor was metal. There were no grab bars or braces. Appellant braced himself with his feet because there was nothing onto which he could hold.

The van made a turn. As a result, the crate slipped and then tipped over, causing appellant to be thrown off the crate. Appellant hit his knee on a metal brace or bracket (believed to be used for holding in a bench seat) that was welded to and sticking up from the van floor. Tavizon, the driver, testified that he

complied with the speed limits, did not take turns at excessive speeds, and drove cautiously because he had the inmates in the back. Appellant testified that from where he was sitting on the floor, he could not see out the front of the van and could only see the skyline.

Appellant testified that he had complained to Tavizon about the lack of seating when they first began going to London. Appellant testified that Tavizon stated he would bring it up with a supervisor. Tavizon testified that he believed the manner in which appellant was being transported (sitting on a milk crate) was unsafe. Tavizon stated he did not believe the van was set up for anybody to sit in the back of it. Robert Mouradian, Tavizon's supervisor, testified that he was aware of the seating arrangements in the van. Mouradian did not believe there were any safety issues or health hazards, because the distance between Madison and London was so short.

We find that the above evidence does not constitute some competent, credible evidence supporting the trial court's conclusion that appellee was not negligent. It is difficult to discern what evidence the trial court relied upon in reaching its conclusion because its analysis on this issue is cursory at best. The trial court's decision states:

"Since the van was a work vehicle, it was not intended for use on a highway. The court finds that defendant's use of the vehicle was proper and in compliance with the standard of reasonable care. Accordingly, the court finds that defendant was not negligent. * * * "

The trial court then went on to discuss whether or not appellee violated any statutes.

The evidence as a whole indicates that appellee failed to meet the minimum standard of care in transporting inmates to a work site. Appellee was transporting seven to nine people in a van that had seats for, at most, five people. The van was not normally used for the transportation of people but was, rather, a cargo van used to haul equipment. Indeed, the van that day was congested with equipment, including a milk crate. It is foreseeable that, with a limited number of actual seats and areas upon which to sit, a person would sit on the milk crate. The van provided no grab bars or other means of support to a person riding in the back without a seat. Indeed, in response to one of appellant's kites, sent after the incident, Madison's health and safety officer stated that vehicles other than buses were to have seats and seat belts and that appellant was not obligated to be transported in the back of a van with no seats or restraints.

We conclude that the trial court erroneously found that appellee was not negligent. Because the trial court concluded that appellee was not negligent, it did not reach any issues involving comparative negligence. For example, there

was evidence that appellant was not required to sit on a milk crate, but that he chose to sit on it. Because we conclude that the trial court's judgment as to negligence was against the manifest weight of the evidence, appellant's assignment of error is sustained, and we reverse the judgment and remand the case for a new trial.

Having sustained appellant's sole assignment of error, we reverse the judgment of the Ohio Court of Claims, and this cause is remanded to that court for a new trial.

*Judgment reversed*
*and cause remanded.*

BOWMAN and PEGGY BRYANT, JJ., concur.