OPINION
{¶ 1} Plaintiff-appellant, James L. Stewart, appeals from a judgment of the Ohio Court of Claims in favor of defendant-appellee, Ohio Department of Rehabilitation and Correction ("ODRC") on the issue of liability. Appellant filed his complaint in the Court of Claims on October 10, 2000, alleging that ODRC was negligent in failing to protect him from an attack by another inmate while both were housed at Madison Correctional Institution ("MCI"). Appellant further alleged that MCI correctional officers ("CO" or "officers") were negligent in breaking up the altercation.
 {¶ 2} Appellant is an inmate at MCI and under the custody of ODRC pursuant to R.C. 5120.16. MCI is a minimum-security institution where inmates occupy cubicles in a dormitory. Appellant is housed in a dormitory known as "Monroe-C." Monroe-C is occupied by 124 inmates and is supervised at any given time by a CO.
 {¶ 3} The evidence at trial generally established the following facts. On April 6, 2000, while waiting for Monroe-C to be called to the cafeteria for lunch, appellant became involved in an altercation with fellow inmate, Robert Chambers. The altercation began after appellant challenged Chambers, and the inmates argued and then shoved each other. The CO on duty in Monroe-C, Natalie Westmoreland, ordered the inmates to stop the argument. Chambers began the physical fight by lunging at appellant's head. When the argument escalated into a physical fight, CO Westmoreland sounded the alarm and began to hold back other inmates from the altercation. Officers Timothy Follrod, Michael Seitz and Sergeant Terry Campbell responded to the alarm. The inmates ignored the officers' orders to cease fighting. Chambers locked appellant's neck in a chokehold. Appellant's face turned blue and he defecated on himself. In response, Sergeant Campbell attempted to pull Chambers off of appellant by pulling on the hood of his sweatshirt. CO Follrod then held Chambers by the neck and lifted him off of appellant. When Chambers was separated from appellant he was biting appellant's ear. Upon separation from appellant, Chambers bit off one-third of appellant's ear.
 {¶ 4} After appellant filed his complaint, the Court of Claims bifurcated the matter, and a trial was held on the sole issue of liability. After hearing testimony from appellant, several inmate and CO eyewitnesses, and a correction supervisor, as well as considering documentary evidence submitted by the parties, the Court of Claims entered judgment in favor of ODRC.
 {¶ 5} The court determined appellant failed to prove by a preponderance of the evidence that ODRC had either actual or constructive notice of the impending altercation. The court also found that ODRC followed security and safety procedures, and appellant did not prove by a preponderance of the evidence that ODRC breached a duty of care in supervising the dormitory where the altercation occurred or in the manner in which officers ended the altercation.
 {¶ 6} Appellant sets forth the following two assignments of error on appeal:
 {¶ 7} "[1.] The magistrate's ruling and the trial court's decision are contrary to law.
 {¶ 8} "[2.] The magistrate's ruling and the trial court's ruling are against the manifest weight of the evidence."
 {¶ 9} Since appellant's assignments of error are interrelated, they will be discussed together.
 {¶ 10} Appellant argues that ODRC has a duty to supervise, prevent disorder, and protect inmates from unreasonable risks. Appellant claims that CO Westmoreland was absent from Monroe-C for 15 to 20 minutes prior to the altercation, and a physical fight is foreseeable if 124 inmates are left unsupervised. In support of this contention, appellant claims Chambers is not a resident of Monroe-C and obtained unauthorized entry into Monroe-C during CO Westmoreland's absence. Second, appellant testified that the phone rang unanswered at the CO's desk in the dormitory for 15 to 20 minutes. Third, appellant alleges that, since Monroe-C was moved into the cafeteria behind schedule, CO Westmoreland was absent from the dorm during the time prior to the altercation. Finally, appellant argues the officers caused greater harm than necessary when breaking up the fight because officers did not exercise ordinary care by first releasing Chambers' grip on appellant's ear.
 {¶ 11} To prevail on a claim of negligence, a plaintiff must show by a preponderance of the evidence that a defendant owed him a duty, that defendant breached that duty, and that the breach proximately caused his injury. Strother v. Hutchinson (1981), 67 Ohio St.2d 282, 285. In the context of a custodial relationship between ODRC and inmates, the state has a common law duty of reasonable care and protection from unreasonable risks. McCoy v. Engle (1987), 42 Ohio App.3d 204, 208. This duty does not, however, make ODRC the insurer of inmate safety. Williams v. Southern Ohio Correctional Facility (1990), 67 Ohio App.3d 517, 526.
 {¶ 12} In order to establish actionable negligence, the events giving rise to the injury must be foreseeable by the defendant. Id. The law is well-settled in Ohio that ODRC is not liable for the intentional attack on one inmate by another unless there is adequate notice of an impending altercation. Mitchell v. Ohio Dept. of Rehab. Corr. (1995), 107 Ohio App.3d 231, 235.
 {¶ 13} The standard of review on a manifest weight challenge is well known. An appellate court may not reverse a trial court's judgment as being against the manifest weight of the evidence if the judgment is "supported by some competent, credible evidence going to all the essential elements of the case." C.E. Morris Co. v. Foley Construction Co. (1978), 54 Ohio St.2d 279, 280, syllabus. Great deference is afforded to the findings of the trial court, which has had the opportunity to view the witnesses in person and to observe their demeanor, gestures and voice inflections and use these observations in weighing the credibility of the testimony. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80. When applying this standard to the present case, it is clear that the trial court's verdict was not against the manifest weight of the evidence.
 {¶ 14} ODRC did not have adequate notice of the impending altercation between appellant and Chambers. Appellant does not challenge this finding. Appellant concedes that Chambers made no threats prior to the altercation. (Appellant's affidavit at 3.) Indeed, inmate Edward Clark testified that the altercation was a surprise because he believed Chambers and appellant were friends. (Appellant's affidavit at 3-4.) Appellant's claim of negligence rests on the allegations that CO Westmoreland left Monroe-C unsupervised for an extended period of time, and officers did not exercise ordinary care in separating the inmates.
 {¶ 15} Appellant contends the fight and resulting injury were foreseeable because CO Westmoreland negligently left Monroe-C unsupervised for 15 to 20 minutes. Appellant relies on three factual contentions to support this argument. First, appellant argues Chambers is not a resident of Monroe-C and therefore gained unauthorized access to the dormitory in order to attack appellant. Appellant offers no evidentiary support for this claim in his brief or affidavit, and appellee specifically refutes this contention in its brief. Accordingly, the trial court rejected this contention.
 {¶ 16} Second, appellant claims that, from his cubicle, he heard the CO's phone ringing at her desk for 15 to 20 minutes unanswered. Appellant concluded this meant CO Westmoreland was absent from Monroe-C for this duration of time. However, by appellant's own admission, he could not see the CO's desk or most of the dormitory from his cubicle.
 {¶ 17} Third, appellant cites CO Westmoreland's admission that she left Monroe-C for two to five minutes to escort an inmate to Sergeant Campbell's office for a disciplinary matter. Sergeant Campbell testified CO Westmoreland was in his office for approximately two minutes.
 {¶ 18} Fourth, appellant cites the fact that Monroe-C was called into the cafeteria late and out of order. Appellant argues these facts create the presumption that CO Westmoreland was absent from Monroe-C for 15 to 20 minutes. However, these facts merely suggest that CO Westmoreland was not at her desk at some point prior to the altercation.
 {¶ 19} We find these factual contentions do not require the trial court to conclude that CO Westmoreland was absent from her post as monitor of Monroe-C for more than two to five minutes. Although CO Westmoreland left Monroe-C unsupervised for this period of time, supervising CO Captain Robert Dunsmore testified that this is an acceptable practice in a minimum-security dormitory. Indeed, Captain Robert Dunsmore testified that officers are not expected to remain at their desk at all times. The CO has a duty to circulate around the dormitory conducting security checks and maintaining order.
 {¶ 20} In addition, CO Westmoreland testified that she was at her desk when the altercation began. She testified that she ordered the inmates to stop fighting and sounded the alarm when they ignored the order. After sounding the alarm, she held back other inmates from entering the fight. Captain Dunsmore testified that CO Westmoreland followed procedure at all points prior to, and during, the altercation. He stated it is policy to not have a single officer break up a fight but, rather, to call for backup in order to maintain control over the inmates and protect officers.
 {¶ 21} Moreover, the trial court found that appellant's actions prior to the altercation demonstrated a "willingness to participate in the fight." (Magistrate's decision at 11.) Thus, the trial court found that, even if CO Westmoreland was required to remain at her desk, appellant did not prove by a preponderance of the evidence that CO Westmoreland could have prevented the altercation.
 {¶ 22} We conclude the manifest weight of the evidence supports the trial court's finding that appellant did not prove by a preponderance of the evidence that ODRC breached a duty of care in the supervision of Monroe-C.
 {¶ 23} Appellant alleges a second act of negligence concerning the manner in which the officers separated Chambers from appellant to end the altercation. Appellant claims CO Follrod did not exercise ordinary care when he broke up the fight without first causing Chambers to let go of appellant's ear. Captain Dunsmore testified that officers are trained to never use more force than absolutely necessary to break up a fight. A review process monitors the use of force by officers, and officers are subject to disciplinary action if such use of force is found to be excessive. Appellant presented no expert testimony demonstrating ORDC conduct breached a duty of care.
 {¶ 24} CO Follrod testified he put his arm around Chambers' neck and stood up in order to separate the inmates. Eyewitnesses testified Chambers held appellant's neck in a chokehold. Appellant admitted being choked until the point of losing his breath and defecating on himself. Several officers and inmates testified that Chambers' chokehold caused appellant's face to turn blue. By all accounts this was a life-threatening situation. The trial court found the acts of the officers prevented greater harm to appellant under these circumstances.
 {¶ 25} We conclude the trial court had competent, credible evidence to support the finding that ORDC was not negligent in the technique CO Follrod used in breaking up the altercation.
 {¶ 26} For the foregoing reasons, we find the Court of Claims did not err in concluding the ORDC was not liable for the injury suffered by appellant in his fight with another inmate. The manifest weight of the evidence does not suggest ORDC was negligent in the supervision of the inmates' dormitory or in the manner in which it ended the altercation. Therefore, both of appellant's assignments of error are overruled, and the judgment of the Ohio Court of Claims is affirmed.
Judgment affirmed.
BRYANT and TYACK, JJ., concur.