[This opinion has been published in *Ohio Official Reports* at 82 Ohio St.3d 563.]

CHAMBERS ET AL., APPELLANTS, *v.* ST. MARY'S SCHOOL, APPELLEE.

[Cite as *Chambers v. St. Mary's School*, 1998-Ohio-184.]

*Torts—Negligence—Violation of an administrative rule does not constitute negligence per se; however, violation may be admissible as evidence of negligence.*

The violation of an administrative rule does not constitute negligence *per se*; however, such a violation may be admissible as evidence of negligence.

(No. 97-1967—Submitted May 27, 1998—Decided August 12, 1998.)

CERTIFIED by the Court of Appeals for Geauga County, No. 96-G-2013.

———————————

{¶ 1} Appellant, Earl Chambers, was employed by the Dairymen's Milk Company as a delivery person. Chambers delivered dairy products to appellee, St. Mary's School ("St. Mary's").

{¶ 2} In the early morning hours of November 29, 1993, Chambers made a delivery to St. Mary's. Chambers testified that there was a light snowfall on the ground. Chambers testified that prior to delivering the milk, he brushed the snow off the steps. He further averred that he did not observe any ice and consequently began his delivery. After taking the milk into the school, Chambers proceeded out the service entrance with empty crates and began down the steps, when he allegedly slipped on a quarter-inch-thick layer of ice.

{¶ 3} Subsequent to this fall, Chambers got up and finished making his deliveries to St. Mary's. However, this time Chambers "made sure [he] was over toward the railing in case [he] started to slip he could grab it." Chambers sustained back injuries in the fall.

{¶ 4} Chambers and his wife filed suit against St. Mary's, alleging that St. Mary's had failed to maintain its premises in a safe manner in violation of R.C.

4101.11, commonly known as the frequenter statute. Specifically, Chambers asserted that St. Mary's should have (1) constructed an awning over the area, (2) installed appropriate gutters, (3) corrected an improperly sloped roof, and (4) properly cleared and salted the area to prevent an unnatural accumulation of ice and water from collecting on the steps.

**{¶ 5}** St. Mary's filed a motion for summary judgment. In opposition, Chambers asserted that his expert witness opined that St. Mary's violated several sections of Ohio's Basic Building Code ("OBBC"), including Sections 805.2 (exterior stairways shall be kept free of ice), 817.12 (exterior stairway shall be protected to prevent accumulation of ice and snow), 823.0 (means of egress lighting), and 817.7 (stairway handrails). Chambers asserted that violations of these sections of the OBBC were negligence *per se*. Adopting the reasoning from St. Mary's brief, the trial court granted summary judgment to St. Mary's.[1]

**{¶ 6}** Chambers appealed, asserting, *inter alia*, that "[t]he court of common pleas erred, as a matter of law, by granting summary judgment against [Chambers] and in favor of [St. Mary's]." Under this assignment of error, Chambers argued that St. Mary's "is liable under a negligence *per se* theory since appellee allegedly committed several violations of the Basic Building Code." In affirming the summary judgment for St. Mary's, the appellate court held that a violation of the OBBC is not negligence *per se* because the OBBC is not a legislative enactment.

**{¶ 7}** Finding its judgment in conflict with *Nemer v. Kerkian* (Feb. 7, 1990), Summit App. No. 14143, unreported, 1990 WL 11714, and *Carpas v. Carpas* (Nov. 15, 1989), Summit App. No. 14043, unreported, 1989 WL 139457, the court of

---

1. St. Mary's in its motion for summary judgment argued that it owed no duty to Chambers for any risks associated with accumulations of ice and snow, or alternatively that even if St. Mary's had a duty to Chambers because of an unnatural accumulation of ice, no liability attaches to St. Mary's because it had no knowledge of the condition and the condition was open and obvious.

appeals entered an order certifying a conflict. This cause is now before this court upon our determination that a conflict exists.

_____

*Gary B. Garson Co., L.P.A.*, and *Paul W. Flowers*, for appellants.

*Quandt, Giffels & Buck Co., L.P.A.*, and *Nita Kay Smith*, for appellee.

*Buckingham, Doolittle & Burroughs* and *Scott A. Richardson*, urging affirmance for *amicus curiae*, Ohio Association of Civil Trial Attorneys.

*Michael R. Thomas*, urging reversal for *amicus curiae*, Building Officials and Code Administrators.

*Hermanies, Major, Castelli & Goodman* and *Richard L. Goodman;* and *Michael R. Thomas*, urging reversal for *amicus curiae*, Ohio Academy of Trial Lawyers.

_____

**LUNDBERG STRATTON, J**.

{¶ 8} The issue certified for our review is "[w]hether a violation of the Ohio Basic Building Code may constitute negligence *per se*."

{¶ 9} In order to recover on a negligence claim, a plaintiff must prove (1) that the defendant owed the plaintiff a duty, (2) that the defendant breached that duty, and (3) that the breach of the duty proximately caused the plaintiff's injury. *Wellman v. E. Ohio Gas Co*. (1953), 160 Ohio St. 103, 108-109, 51 O.O. 27, 30, 113 N.E.2d 629, 632; *Sedar v. Knowlton Constr. Co.* (1990), 49 Ohio St.3d 193, 198, 551 N.E.2d 938, 943, overruled on other grounds, *Brennaman v. R.M.I. Co*. (1994), 70 Ohio St.3d 460, 639 N.E.2d 425. Typically, a duty may be established by common law, legislative enactment, or by the particular facts and circumstances of the case. *Eisenhuth v. Moneyhon* (1954), 161 Ohio St. 367, 53 O.O. 274, 119 N.E.2d 440, paragraph one of the syllabus. Where a legislative enactment imposes a specific duty for the safety of others, failure to perform that duty is negligence *per se*. *Eisenhuth* at paragraph two of the syllabus. Application of negligence *per*

*se* in a tort action means that the plaintiff has conclusively established that the defendant breached the duty that he or she owed to the plaintiff.  It is not a finding of liability *per se* because the plaintiff will also have to prove proximate cause and damages.  *Pond v. Leslein* (1995), 72 Ohio St.3d 50, 53, 647 N.E.2d 477, 479.

{¶ 10} In *Swoboda v. Brown* (1935), 129 Ohio St. 512, 522, 2 O.O. 516, 521, 196 N.E. 274, 278, this court stated:

"The distinction between negligence and 'negligence per se' is the means and method of ascertainment.  The first must be found by the jury from the facts, the conditions and circumstances disclosed by the evidence; the latter is a violation of a specific requirement of law or ordinance, the only fact for determination by the jury being the commission or omission of the specific act inhibited or required."

"In other words, if a positive and definite standard of care has been established by legislative enactment whereby a jury may determine whether there has been a violation thereof by finding a single issue of fact, a violation is negligence *per se*; but where the jury must determine the negligence or lack of negligence of a party charged with the violation of a rule of conduct fixed by legislative enactment from a consideration and evaluation of multiple facts and circumstances by the process of applying, as the standard of care, the conduct of a reasonably prudent person, negligence *per se* is not involved."  *Eisenhuth* at 374-375, 53 O.O. at 278, 119 N.E.2d at 444.

{¶ 11} Thus, the application of negligence *per se* effectively reduces the elements that a plaintiff must prove in a negligence action.  *Hernandez v. Martin Chevrolet, Inc.* (1995), 72 Ohio St.3d 302, 304, 649 N.E.2d 1215, 1216.  Negligence *per se* is tantamount to strict liability for purposes of proving that a defendant breached a duty.  See *Lonzrick v. Republic Steel Corp.* (1966), 6 Ohio St.2d 227, 250, 35 O.O.2d 404, 417, 218 N.E.2d 185, 200 (Taft, C.J., dissenting).

{¶ 12} Since the application of negligence *per se* effectively reduces the plaintiff's burden of proof in a tort case, we must carefully examine whether an extension of negligence *per se* to violations of administrative rules is justified.

{¶ 13} In *Eisenhuth,* this court held that a violation of a "legislative enactment" was negligence *per se*. Chambers asks us to extend the doctrine of negligence *per se* to violations of the OBBC, which constitutes administrative rules. In order to make such a decision, we must determine whether there are any material differences between statutes and administrative rules which would preclude us from extending the application of negligence *per se* to violations of administrative rules.

{¶ 14} Legislative authority is vested with the General Assembly. *Belden v. Union Cent. Life Ins. Co.* (1944), 143 Ohio St. 329, 28 O.O. 295, 55 N.E.2d 629, paragraph one of the syllabus. A legislative enactment, or statute, is initially introduced as a bill. Section 15(A), Article II, Ohio Constitution. The introduction of a bill is a manifestation of public policy, which is determined primarily by the General Assembly. See *State v. Smorgala* (1990), 50 Ohio St.3d 222, 223, 553 N.E.2d 672, 673-674.

{¶ 15} A bill may originate in either the House of Representatives or the Senate. Section 15(A), Article II, Ohio Constitution. All bills are subject to debate, discussion, and amendment prior to being put to a vote. *Id*. Once all amendments are made, the bill must still be passed by a concurrence of a majority of members from both the Senate and the House of Representatives and be signed by the Governor before it becomes law. Sections 15 and 16, Article II, Ohio Constitution.

{¶ 16} Members of the General Assembly are accountable to their constituents because they are elected to office. Section 2, Article II, Ohio Constitution. If the constituents are unhappy with policy determinations made by members of the General Assembly, they can change the makeup of the General Assembly at the voting booth. Thus, in effect, citizens of the state may shape the nature of legislation.

**{¶ 17}** The legislative process and accountability are the cornerstones of the democratic process which justify the General Assembly's role as lawmaker. In contrast, administrative rules do not dictate public policy, but rather expound upon public policy already established by the General Assembly in the Revised Code. " 'The purpose of administrative rulemaking is to facilitate an administrative agency's placing into effect a policy declared by the General Assembly in the statutes to be administered by the agency.' " *Doyle v. Ohio Bur. of Motor Vehicles* (1990), 51 Ohio St.3d 46, 47, 554 N.E.2d 97, 99, quoting *Carroll v. Dept. of Adm. Serv.* (1983), 10 Ohio App.3d 108, 110, 10 OBR 132, 133, 460 N.E.2d 704, 706. Yet determination of public policy remains with the General Assembly. *State ex rel. Bryant v. Akron Metro. Park Dist. for Summit Cty.* (1929), 120 Ohio St. 464, 479, 166 N.E. 407, 411-412, affirmed *State ex rel. Bryant v. Akron Metro. Park Dist. for Summit Cty.* (1930), 281 U.S. 74, 50 S.Ct. 228, 74 L.Ed. 710. Administrative agencies may make only "subordinate" rules. *Belden v. Union Cent. Life Ins. Co.* (1944), 143 Ohio St. 329, 342-343, 28 O.O. 295, 301, 55 N.E.2d 629, 635-636; see, also, *Redman v. Dept. of Indus. Relations* (1996), 75 Ohio St.3d 399, 404, 662 N.E.2d 352, 357; *Blue Cross of Northeast Ohio v. Ratchford* (1980), 64 Ohio St.2d 256, 259, 18 O.O.3d 450, 452, 416 N.E.2d 614, 617.

**{¶ 18}** Unlike the legislative process, rulemaking by administrative agencies does not involve the collaborative effort of elected officials. Directors of administrative agencies are appointed by the Governor. R.C. 121.03. It is these directors and/or their employees who propose and adopt administrative rules. Administrative agencies have the technical expertise to compose such rules. *Farrand v. State Med. Bd.* (1949), 151 Ohio St. 222, 39 O.O. 41, 85 N.E.2d 113. However, administrative agencies have no accountability as do the members of the General Assembly.[2]

---

2. Administrative rulemaking is subject to the conditions set out in R.C. 119.01 to 119.13. Generally, these conditions require that notice be given of a public hearing to be held on a proposed

**{¶ 19}** The specific issue before this court is whether a violation of the OBBC is negligence *per se*. However, our comparison of the legislative process and the rulemaking process dictates that we examine this issue in the broader context of whether violations of any administrative rules should require the application of negligence *per se*.

**{¶ 20}** If we were to rule that a violation of the OBBC (an administrative rule) was negligence *per se,* we would in effect bestow upon administrative agencies the ability to propose and adopt rules which alter the proof requirements between litigants. Altering proof requirements is a public policy determination more properly determined by the General Assembly because the General Assembly, as opposed to administrative agencies, has the authority and accountability to dictate public policy. Giving administrative agencies the ability to adopt such rules would be tantamount to an unconstitutional delegation of legislative authority, since administrative agencies cannot dictate public policy.

**{¶ 21}** Further, scores of administrative agencies propose and adopt perhaps hundreds of rules each year. Considering the sheer number and complexity of administrative rules, a finding that administrative rules establish negligence *per se* could open the floodgates to litigation. Strict compliance with such a multitude of rules would be virtually impossible. In effect, it would make those subject to such rules the insurer of third parties who are harmed by any violation of such rules.[3]

---

rule, where persons affected thereby may comment and present evidence pertaining to the unreasonable or unlawful effect of the rule. R.C. 119.03(A). The rule is then reviewed by the Joint Committee on Agency Rule Review, which may, under certain circumstances, recommend that the General Assembly adopt a resolution invalidating the rule. R.C. 119.03(I). Assuming that the rule is not invalidated at this point, it is still subject to invalidation at the next regular session of the General Assembly. R.C. 119.03(I)(2)(b). If the rule is not invalidated at that session, then the agency may issue an order adopting the rule. R.C. 119.03(D).

These conditions provide constraints in rulemaking. However, they do not elevate rulemaking to the status of lawmaking for purposes of applying negligence *per se* to violations of administrative rules.

3. For example, Section 805.2 of the OBBC requires that all exterior stairways be kept free of ice and snow. The language in this rule mandates removal of snow from steps without reference to any

Only those relatively few statutes which this court or the General Assembly has determined, or may determine, should merit application of negligence *per se* should receive such status.

**{¶ 22}** For all the aforementioned reasons, we hold that the violation of an administrative rule does not constitute negligence *per se*; however, such a violation of an administrative rule may be admissible as evidence of negligence. *Stephens v. A-Able Rents Co.* (1995), 101 Ohio App.3d 20, 27-28, 654 N.E.2d 1315, 1320.

**{¶ 23}** The OBBC constitutes administrative rules proposed and adopted by the Board of Building Standards, an administrative agency, whose members are appointed by the Governor. Ohio Adm.Code 4101:2-1-03, R.C. 3781.07, and 3781.10. Therefore, a violation of the OBBC is not negligence *per se*. Accordingly, we affirm the judgment of the appellate court.

*Judgment affirmed.*

MOYER, C.J., PFEIFER and COOK, JJ., concur.

DOUGLAS, RESNICK and F.E. SWEENEY, JJ., dissent.

---

exceptions or a reasonableness standard. An application of negligence *per se* to such a rule would essentially make a premises owner or occupier strictly liable for a slip and fall as soon as snow started to fall. It would be virtually impossible for a premises owner to comply with such a strict standard.

In the case at bar, the snow fell in the very early morning hours just prior to Chambers's arrival at St. Mary's. It is unreasonable to require St. Mary's to keep a worker on call twenty-four hours a day to remove snow at a moment's notice.

This is a prime example of why negligence *per se* should not apply to administrative rules.

**DOUGLAS, J., dissenting**.

{¶ 24} I dissent from the judgment and opinion of the majority. Today the majority has determined that a violation of the Ohio Basic Building Code may never constitute negligence *per se*. What is even more shocking is that the majority further holds that the extension of the doctrine of negligence *per se* to violations of *any* administrative rules is *never* justified. The breadth of the majority opinion is alarming and, in addition, is simply wrong! To that end, the conclusions reached by the majority have disturbed well-settled law and have effectively overruled numerous decisions of this court.

{¶ 25} We have held time and time again that an administrative rule issued pursuant to statutory authority has the force and effect of law unless it is unreasonable or is in clear conflict with a statute governing the same subject matter. See, *e.g.*, *Youngstown Sheet & Tube Co. v. Lindley* (1988), 38 Ohio St.3d 232, 234, 527 N.E.2d 828, citing *Kroger Grocery & Baking Co. v. Glander* (1948), 149 Ohio St. 120, 125, 36 O.O. 471, 474, 77 N.E.2d 921, 924. See, also, *State ex rel. Kildow v. Indus. Comm.* (1934), 128 Ohio St. 573, 580, 1 O.O. 235, 238, 192 N.E. 873, 876. Indeed, this court has also implicitly agreed that a tortfeasor may be negligent *per se* in violating a relevant administrative regulation. See *Merchants Mut. Ins. Co. v. Baker* (1984), 15 Ohio St.3d 316, 15 OBR 444, 473 N.E.2d 827. The majority, however, has turned a blind eye to these and other important cases decided by this court.

{¶ 26} Accordingly, for the foregoing reasons, I must dissent.

RESNICK and F.E. SWEENEY, JJ., concur in the foregoing dissenting opinion.

———————————