This case is on appeal from the February 6, 1998 and July 7, 1998 judgments of the Sandusky County Court of Common Pleas which granted summary judgment to appellees, Dawn Frey and James Thompson, and dismissed the negligence actions of appellant, Audrey McCue. On appeal, appellant asserts the following assignments of error:
"Assignment of Error No. 1:
 The trial court erred in granting Defendant's Motion for Summary Judgment because the Defendants have failed to meet their burden of establishing the Affirmative Defense of `natural accumulation of ice and snow.'
"Assignment of Error No. 2:
 The conflicting testimony of the Defendant, Dawn Frey, regarding the observability of snow and ice on the rear steps and ground when the Plaintiff fell, renders Summary Judgment improper.
"Assignment of Error No. 3:
 The condition created by the Defendants was an unnatural latent defect in that the steps were constructed of pressure treated wood, which became more slippery than expected when they became moist.
"Assignment of Error No. 4:
 The trial court erred in granting Defendant James Thompson's Motion for Summary Judgment.
"Assignment of Error No. 5:
 The trial court committed prejudicial error when it granted Defendant James Thompson's Motion for Summary Judgment and held that the Ohio Basic Building Code (OBBC) did not apply to Defendant, Dawn Frey's residence."
Appellant brought this action in 1993 against Dawn Frey (the owner of the home where appellant fell) and Jim Thompson (the owner and/or operator of the construction business that installed the stairs at issue). Appellant's husband, James F. McCue, was originally a party to the suit, but he died before the case was resolved. Appellant alleged that the negligence of the defendants caused her to slip and fall and suffer injury. She also alleged that the negligence of the defendants inflicted emotional distress upon her as well. Frey filed a cross-claim against Jim Thompson for indemnity and contribution.
Appellees both moved for summary judgment, once on the issue of whether the Ohio Basic Building Code applied to Frey's home and once on the issue of liability. The following is the undisputed evidence presented in the depositional testimony and affidavits.
On November 24, 1991, appellant, her daughter, Mary McCue, and two friends, Viola Ziegler and Jeanne Darr, toured Frey's home as part of a house tour to raise proceeds for a local charity. When they arrived at the house in the mid-afternoon, the weather was poor; with blowing snow, sleet, and overcast skies throughout the day. Appellant could not recall if there was snow on the ground before she went into the home, but she did recall that it was snowing when she came out. Mary McCue recalled seeing patches of snow on the ground that were slippery. She also saw that the walkways were occasionally covered with patches of snow, but they were not slippery. Darr also noted that snow was laying on the ground when they entered the Frey house, but she did not find the walkways slippery. Ziegler recalled that it was snowing lightly and the walkways were not slippery.
After touring Frey's home, Mary McCue left by the front door because the rear exit was very crowded. The other three women also attempted to leave by the front door. They were stopped by some people who were greeting newcomers and told that they needed to exit through the back door. The back door was off the kitchen and through an unheated porch. The back exit had a screen door and four wooden steps with no hand railing.
As Darr left the porch area, she immediately noticed that it had begun to snow while they were inside. She saw that the steps were covered with a light layer of snow. On her first step, she began to slip so she used the doorway frame for support as much as she could. However, she had to walk down the remainder of the stairs without any support because there was no railing and she could not reach the screen door after she had begun to descend. After she descended, she turned to help appellant, but she had already fallen.
Ziegler exited the house next. She first noticed that the snow had changed to a wet snow as she walked from the house into the screened porch and then outside. She also saw that the rear steps were covered with snow and were slippery. However, she did not have any trouble walking down the stairs. She believed that all of them made comments about the steps being slippery.
Appellant testified that she did not recall noticing that the weather had changed, although she heard the comments of others and could have noticed the weather conditions herself through the porch windows. As she exited the home, she did notice the icy snow in the area. She did not hear the warnings of her two companions who preceded her down the stairs, that the stairs were icy. It was only after she fell that appellant noticed the ice/snow on and around the steps. Mary McCue also saw snow on the stairs after her mother fell.
Appellant testified that she slipped when her first foot touched down on the top step. The screen door flew away from her and there was nothing for her to grab on to. No one saw her fall.
Appellant and her two friends believed that the steps were slippery. All four women recalled that the wooden steps had been painted with a glossy enamel paint. The paint was visible when the snow was pushed aside by their foot tracks. None of the women recognized the stairs depicted in the photographs presented at the depositions as being the stairs upon which appellant fell.
Appellant did not believe that Frey knew the steps were icy because she told appellant after she fell that someone else later told her that the steps were slippery. None of the other women believed that Frey knew of the ice and snow on the steps. Frey attested that she was assisting visitors on the second floor and was unaware that the weather had changed to freezing rain while appellant was in the home. No one ever informed her that there was a problem with visitors leaving through the back door. However, when she went to see appellant after the fall, Frey could see that there was ice on the steps.
Frey did not receive any of the funds raised by the tour. Frey's home is a restored single family dwelling and she has never had to have a building permit for the work done to the home. She testified that the stairs were constructed of treated lumber by her husband and were moved from the front of the house to the back porch by Thompson's employees. The stairs were cut in half by Thompson's workers at Frey's request. The wooden stairs that were originally at the porch entrance were placed in a pile on the property and remain there today. The steps were never sealed or painted. Sometime after the accident, the steps were destroyed and replaced with concrete steps.
James Thompson, the contractor who installed the new concrete steps in the front of the house, testified that he could not recall moving the old wooden steps to the back porch. Neither could any of his employees. Furthermore, Thompson testified that there are no building inspections in the city of Clyde and a building permit is only needed if structural changes are made. If Thompson had moved the steps to the porch, he would not have consulted the Ohio Basic Building Code to determine whether a handrail was required because he did not believe that it was applicable to this type of work in Clyde. He did not know of any requirement that this type of stair have a handrail, canopy, or non-slip surface.
The court first considered only the issue of whether the Ohio Basic Building Code was applicable to this home. In its February 6, 1998 judgment, the court held that there were no genuine issues of material fact as to this issue and that the code did not apply. Subsequently, the court then considered the negligence causes of action. In its July 7, 1998 judgment, the court held that appellant's fall was caused by a natural accumulation of ice and/or snow and there was no evidence that appellees knew or should have known that the stairs were substantially more dangerous than appellant should have anticipated. Therefore, the court concluded that appellees did not have a duty or breach a duty owed to appellant, and appellees were entitled to summary judgment. Appellant then sought an appeal to this court.
All of appellant's assignments of error challenge the granting of summary judgment. Since the issue of whether summary judgment should be granted is a question of law, an appellate court determines de novo whether the requirements of Civ.R. 56 have been met. Smiddy v. The Wedding Party, Inc. (1987), 30 Ohio St.3d 35,36, and Ohio Farmers Ins. Co. v. Binegar (Dec. 29, 1993), Montgomery App. No. 13906, unreported. Pursuant to Civ.R. 56(C), summary judgment is appropriate if:
 "* * * there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor. * * *."
In her first, second, and third assignments of error, appellant argues that the trial court erred by granting summary judgment to appellees. Although appellant refers to appellees, we interpret these assignments of error as relating to appellee Frey since they relate only to appellant's cause of action against Frey. Appellant argues that Frey did not meet her burden of establishing her affirmative defense of assumption of the risk. Appellant first argues that because she was forced to use the rear exit after attempting to use the front exit, Frey cannot assert that she voluntarily assumed an open and obvious danger. She relies on this court's holding in Mizenis v. SandsMotel, Inc. (1975), 50 Ohio App.2d 226, in which this court held a motel owner liable for injuries suffered by a guest because the owner failed to remove a natural accumulation of ice and snow on the only staircase leading to the guest's second floor room after the owner had notice of the unreasonable danger the accumulation of ice and snow presented.
To survive summary judgment, appellant first had to present sufficient evidence to demonstrate that appellees owed appellant a duty to protect her from injury. Chambers v. St. Mary's School
(1998), 82 Ohio St.3d 563. If appellant could not present evidence to support her prima facie case, we need not reach the issue of whether appellees presented evidence to support their affirmative defense of assumption of the risk. Fraleigh v.Heatherdowns Country Club Associates (May 26, 1995), Lucas App. No. L-94-202, unreported.
Frey's duty, as an owner/occupier of land, to protect appellant from harm "may be established by common law, legislative enactment, or by the particular facts and circumstances of the case." Chambers, supra. The facts of this case do not give rise to a special duty between the parties. Therefore, any duty appellee owed to appellant in this case must arise from statute or common law.
Failure to perform a duty required by law results in negligence per se. However, the violation of an administrative rule does not establish negligence per se because such rules are not legislative enactments. Nonetheless, the violation of such a rule can be used as evidence of negligent conduct. Id. Thus, the violation of Ohio's Basic Building Code in this case could not be used to establish negligence per se but could be used to prove common law negligence.
Under the common law, the duty of an occupier/owner of land toward those persons coming onto his property is determined by relationship between the parties. Light v. Ohio University (1986),28 Ohio St.3d 66, 67. Three classifications of injured parties are recognized in premises liability cases: invitee, licensee, and trespasser. Gladon v. Greater Cleveland Regional Transit Auth.
(1996), 75 Ohio St.3d 312, 315. Appellant maintains that she was a business invitee. We disagree.
Business invitees are: "persons who rightfully come upon the premises of another by invitation, express or implied, for some purpose which is beneficial to the owner." Id. See, also,Scheibel v. Lipton (1951), 156 Ohio St. 308, paragraph one of the syllabus. While appellant did contribute to a charity as a prerequisite to touring Frey's home, Frey did not receive any of the proceeds. Therefore, Frey did not invite any of the touring guests onto her property for her benefit.
Rather, appellant was merely a licensee: a person who "goes upon the lands of another by permission and acquiescence for his own pleasure or convenience, and not by invitation * * *."Fuehrer v. Bd. of Edn. (1991), 61 Ohio St.3d 201, 204, citingHannan v. Ehrlich (1921), 102 Ohio St. 176, 185-186. See, also,Scheibel, supra. A occupier/owner of land owes a licensee the duty "(1) to exercise ordinary care not to cause injury to his guest by any act of the host or by any activities carried on by the host while the guest is on the premises, and (2) to warn the guest of any condition of the premises which is known to the host and which one of ordinary prudence and foresight in the position of the host should reasonably consider dangerous, if the host has reason to believe that the guest does not know and will not discover such dangerous condition." Scheibel, supra at paragraph three of the syllabus. Restated in terms of the obligations of a host who invites a guest to his home when ice and snow may be present, the host has "no common-law duty to remove or make less hazardous a natural accumulation of ice and snow on private sidewalks or walkways on the homeowner's premises, or to warn those who enter upon the premises of the inherent dangers presented by natural accumulations of ice and snow." Brinkman v. Ross (1993), 68 Ohio St.3d 82, at the syllabus.
In the case before us, appellant was a licensee. TheMizenis case, therefore, is distinguishable on the ground that it involved a business invitee. Since appellant was a licensee, Frey had no duty to remove the ice and snow that had accumulated on the back steps of her house or to warn appellant of the danger posed by such accumulation.
Appellant argues, however, that when Frey forced appellant to use the rear steps, a duty arose to insure that they were reasonably safe. We disagree. There is no case law which holds that the duty of the host is altered by the fact that they ask their guests to use a certain exit. Also, there was no evidence in this case, as appellant suggests, that she noted the dangerous conditions of the rear steps and requested that she be permitted to use the front steps to avoid injury.
Appellant also argues that appellee Frey had a duty to protect appellant because Frey knew or should have known that the steps were unreasonably dangerous. Blanchard attested to the fact that treated wood is more slippery when wet. Appellant also alleges that Frey knew that the absence of a handrail would increase the risk of falling if someone slipped on the steps. Appellant classifies the slipperiness of the pressure treated wood steps as a latent defect which made the accumulation of ice and snow more dangerous.
A landowner owes licensees the duty to protect them from unreasonably dangerous conditions of which the landowner knows or had reason to know. The landowner has no duty to inspect the premises to discover unreasonable dangers. Ferguson v. EastwoodMall, Inc. (Dec. 4, 1998), Trumbull App. No. 97-T-0215, unreported, quoting Page, The Law of Premises Liability (1988), 86, Section 4.8.
In the case before us, Blanchard attested to the fact that the height of the risers varied and that treated wood steps are more slippery than ordinary wooden steps. However, there was no evidence presented that appellant Frey knew or should have known that the stairs were substantially more slippery than any other surface when they were wet. Frey only testified that the steps were slippery when wet. Finally, the absence of a handrail was easily observable to appellant who could appreciate that danger. Therefore, we find that Frey had no duty to warn appellant of the danger posed by the wet wooden steps that lacked a handrail.
Appellant also contends that there was conflicting evidence presented as to whether Frey knew that the stairs were covered by ice and snow. As we have already discussed, even if Frey knew the stairs were covered with ice and snow, she had no duty to clear them.
We conclude that appellant failed to present any evidence that appellee Frey owed appellant a duty of care that was breached. We need not even reach the issue of whether appellant assumed any risk. Appellant's first, second, and third assignments of error are not well-taken.
Finally, appellant argues in her fourth and fifth assignments of error that the trial court erred by granting summary judgment to appellee Thompson. Thompson first moved for summary judgment on the issue of whether the Ohio Basic Building Code applies to Frey's home. Appellant did not oppose the motion. As state above, the court found that the code did not apply. Thompson then moved for summary judgment on the issue of liability. Thompson argued that there was no evidence that he violated any good construction practices or failed to use ordinary care. Thompson testified that he did not know of any requirement that this type of stair have a handrail, non-slip surface, or canopy. In response, appellant contended that Thompson was liable under ordinary negligence law. Attached to her memorandum in opposition was the affidavit of Blanchard. Blanchard attested to the fact that the risers on the steps were of varying heights, which made them dangerous. He further attested that based on sound architectural and engineering principles related to construction of steps, these steps, because they lacked some type of anti-skid material and a handrail, were unreasonably dangerous. He believed that such defects were not minor. He attested that the National Fire Protection Association's Life Safety Code requires handrails and non-slip surfaces for exit stairs. He further attested that treated wood becomes more slippery than normal wood and that this fact would not be apparent to the observer. Finally, he attested that when Thompson attached the steps to the residence without correcting these defects, he breached his duty to employ good construction practices.
The court held that Thompson was entitled to summary judgment because appellant's fall was caused by a natural accumulation of snow and ice and there was no evidence that Thompson knew that the stairs at the time were substantially more dangerous than appellant should have anticipated.
In her fourth assignment of error appellant asserts that the court erred when it considered her claim against Thompson as having been based on a premises liability claim rather than an ordinary negligence claim. We agree. Since Thompson is not the landowner/occupier of the property, the premises liability language in the judgment entry was not appropriate as to Thompson. Appellant bases her cause of action for negligence on allegations that Thompson's actions made the stairs unreasonably dangerous: he moved the stairs to the rear entrance and did not install a handrail, add non-skid materials, or adjust the risers. Upon an examination of the evidence presented, we find that there is a question of fact as to the material issue of whether Thompson attached the stairs to the home with due care. Blanchard attested that he did not. Thompson testified that he did.
Thompson argues on appeal for the first time that appellant also lacked proof of proximate cause: that Thompson's alleged negligence was the cause of appellant's fall rather than the ice and snow. However, since the issue of proximate cause was never presented to the court, Thompson cannot assert it on appeal.Maust v. Meyers Products, Inc. (1989), 64 Ohio App.3d 310, 313-314.
Accordingly, we find that summary judgment as to the issue of liability should not have been granted to Thompson. Appellant's fourth assignment of error is well-taken.
In her fifth assignment of error, appellant argues that the trial court erred when it granted summary judgment to Thompson on the issue of whether the Ohio Basic Building Code was applicable to Frey's home. We agree with Thompson that since appellant never responded to his motion for summary judgment on this issue, he has waived his right to contest the trial court's decision as to this issue on appeal. Maust, supra. Therefore, appellant's fifth assignment of error is not well-taken.
Having found that the trial court did commit error prejudicial to appellant, the judgment of the Sandusky County Court of Common Pleas is reversed. This case is remanded to the lower court for further proceedings consistent with this decision. Pursuant to App.R. 24, appellee Thompson is hereby ordered to pay the court costs incurred on appeal.
JUDGMENT REVERSED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Peter M. Handwork, P.J.______ _______________________________ JUDGE
Richard W. Knepper, J._______ _______________________________ JUDGE
Mark L. Pietrykowski, J._____ _______________________________ JUDGE CONCUR.