OPINION
Plaintiff-appellant, Raymond A. Mayville, appeals from a judgment of the Ohio Court of Claims in favor of defendant-appellee, Ohio Department of Rehabilitation and Correction, in plaintiff's negligence action to recover damages for an injury plaintiff received while helping repair a freight elevator located at London Correctional Institution ("LCI") where plaintiff is an inmate. Plaintiff assigns a single error:
 THE TRIAL COURT'S DECISION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND IS NOT SUPPORTED BY EVIDENCE.
Because the trial court's judgment is supported by the manifest weight of the evidence, we affirm.
 I.
On December 4, 1996, plaintiff brought this negligence action in the Court of Claims against defendant, claiming defendant was negligent in failing to (1) provide a safe working environment, (2) provide adequate supervision, and (3) maintain safety features on the elevator. Trial was held before the court on May 1, 1998. An earlier opinion by this court provides an extensive review of the evidence plaintiff presented at that time. See Mayville v. Dept. of Rehab. Corr. (Mar. 23, 1999), Franklin App. No. 98AP-824, unreported. Because plaintiff's appeal so heavily depends on the facts, we note pertinent portions of this court's factual summary as follows:
 * * * Appellant was an inmate at LCI and worked in the brush factory as a machine operator sewing mops together. On the day in question, appellant and Basil H. Sturgill, another inmate, were working in the brush factory. Charles Heppard was the superintendent of the brush factory. According to Mr. Heppard, he was informed by appellant and Mr. Sturgill that the elevator was not working. Mr. Sturgill testified that it could have been him that discovered the problem with the elevator and informed Mr. Heppard of such problem. Appellant testified that Mr. Heppard asked him to help repair the elevator.
 The elevator in question was a freight elevator that was used in the brush factory and serviced four floors including the basement. The estimated age of the elevator at the time of the incident was sixty-two years. Prior to the incident, the elevator had experienced various problems. On the day in question, the elevator was not stopping even with the desired floor, a problem that had previously occurred. Mr. Sturgill and Mr. Heppard had worked on the elevator prior to the day in question. Neither had had training on the maintenance or repair of elevators.
 In order to repair the elevator, appellant was placed inside the elevator and was directed by Mr. Heppard on when to move the elevator. Mr. Heppard and Mr. Sturgill were located above the elevator shaft on a landing that contained the brake system. The floor of the landing had a rectangular opening in it through which cables ran and through which one could look down inside the elevator car, the top of which is open. This allowed Mr. Heppard and Mr. Sturgill to yell down at appellant who was in the elevator car. Appellant had never helped Mr. Heppard with this type of work before.
 In order to make the elevator go up, appellant needed to apply constant pressure to the "up" button. [Appellant testified that] [w]hen one took a finger off the button, the elevator was supposed to stop immediately. The button was located on a control panel that was located just inside the elevator on the upper right-hand side (as one faces out). Hence, in order to operate the elevator, one had to stand in the front of the elevator.
 At the time of the incident, they had been working on the elevator for about twenty to thirty minutes and had raised and lowered the elevator twenty to thirty times or "so many times * * * [Mr. Sturgill lost] track." The elevator was located between the second and third floors. Appellant described what happened as follows:
 "* * * Mr. Heppard yelled down to me. When I looked up to see what he wanted, my foot drifted over, and of course, not realizing that my foot drifted over, I just pushed the up button when he told me to bring it up, and my foot just got in between the second between the third floor and the elevator."
 Appellant's left foot was caught between the elevator and third floor, causing his toes to be severed.
 This was the first time appellant had looked up. Appellant looked up because Mr. Heppard yelled at him. He then looked down at the button, pushed it and realized his foot had drifted over. The elevator was about six inches from the third floor line, and it was "not long" or a matter of a second before his foot was caught. Appellant stated he did not know his foot was over the edge at the moment he pushed the button. He testified that he had no chance to pull it back and that had the elevator stopped when he let go of the button, there would have been enough time for him to pull his foot away.
 Appellant testified it was not complicated to operate the elevator. He testified he was aware that he had to be looking at the bottom of the elevator in order to tell when to take his finger off the button. Appellant knew that he had to watch the location of his feet and that his feet could get injured. * * * Appellant stated that what happened was "just an accident," and he put the blame on no one. (Citations omitted. Id.)
Plaintiff presented additional testimony at that May 1, 1998 proceeding, cited as "Tr. I." According to plaintiff, prior to the accident he had operated the elevator without difficulty many times for five to six months while taking materials up and down in the brush factory. Inmate Anderson, who was the regularly assigned elevator operator, showed him how to operate it, "what to look for in terms of the coast," and how to stop it. (Tr. I, 161-162.) Plaintiff admitted that in his prior experience, the elevator would "coast up" when he took his hand off the "up" button; he had to guess when to let go of the button for the elevator to be level with a floor landing. (Tr. I, 176-177.) He further testified that for the five or six months he operated the elevator he was aware the front of the elevator had no inside safety gate.
As to the day of the accident, plaintiff admitted he could not see Heppard and Sturgill above him in the elevator shaft, and their cues to him were only auditory not visual cues. He further admitted he did not need to look up when he pressed the control button to make the elevator move upward just before the accident. Plaintiff agreed the only difference on the day of the accident from his prior experiences was his lack of attention to where his feet were.
At the close of plaintiff's evidence, the court granted defendant's motion for dismissal pursuant to Civ.R. 41(B)(2). Based on plaintiff's evidence, the court concluded defendant had not breached a duty of reasonable care and was not a proximate cause of plaintiff's injury.
Plaintiff appealed the Court of Claim's decision to this court. Mayville, supra. This court held the judgment of the trial court was against the manifest weight of the evidence because "while there was evidence upon which the trial court could have relied to find appellant's own conduct was a cause of his injury, there was other unimpeached evidence that made out a prima facie case of negligence." Id. Specifically, regarding breach of duty, this court noted no evidence was presented in opposition to testimony that laypersons should not attempt to perform the necessary repair on the elevator, and that three untrained persons, including plaintiff, were doing so. Regarding proximate cause, this court noted the elevator "was not working properly that day and continued to move even after one took the pressure off of the button," with no conflicting evidence to plaintiff's testimony that "had the elevator stopped when he took his finger off the button, he would have had time to pull his foot out of the way." Id. This court observed that any evidence regarding plaintiff's awareness of the danger, his failure to keep his foot out of the way, and his testimony that it was "just an accident" would, at most, be relevant to a comparative negligence analysis which the trial court did not reach because it found defendant had not breached a duty. The judgment of the Court of Claims was reversed and the matter remanded for a new trial. Id.
 II.
On remand, the case was tried to a magistrate of the Court of Claims on the issue of liability. The evidence plaintiff presented in the original trial was presented by stipulation, and the state then presented its case, cited as "Tr. II."
Norman Martin, acting chief inspector of the elevator inspections section of the Ohio Department of Commerce, testified the subject elevator is a traction freight elevator and is a simple type of machine with a very simple push button operation. Someone with a mechanical background can make adjustments to the brakes of that elevator. Hundreds of locations throughout Ohio have on-site individuals with mechanical backgrounds who routinely perform that work. Moreover, according to Martin, the elevator is not designed to stop immediately because of discomfort to the riders; instead, the elevator is designed to "coast to the brake." (Tr. II, 19-20.) No performance standards exist regarding the amount of coast for the elevator, but a coast of three to six inches would not be out of compliance. According to Martin, a front inside car gate was not required by code rules and regulations either prior to or as of May 1994, and the elevator was in compliance with code regulations on the date of the accident.
Robin Jago, manager of the brush factory operations, testified the inside front of the elevator has never had a car gate, either before or since the accident, and the elevator has always had some "coast." According to Jago, the only training a person needed to operate the elevator was common sense with a good practical knowledge of safety, but Jago insisted plaintiff was trained to operate the elevator. Jago stated the key to stopping the elevator level with a floor was the operator keeping his eyes on the floor. According to Jago, no one else had been injured on the elevator since he began working at LCI in 1989. Jago opined that Heppard, who was attempting the repairs to the elevator brakes, was "very, very handy" and had good mechanical ability. (Tr. II, 54.) Moreover, Jago testified a person inside the elevator would not have to look up to hear someone on the elevator platform above him where the repairs were being done.
Charles Heppard, who was working on the elevator brakes at the time plaintiff was injured, testified to his extensive mechanical repair background. He was familiar with the elevator's mechanics because he worked on the elevator's electrical and mechanical systems, including brakes, numerous times between 1982 and May 1994. Heppard testified he previously performed the same brake adjustment more than ten times and no disassembly or tools were required. Heppard noted that inmate Sturgill, who was assisting him in the brake repairs, is a maintenance mechanic.
According to Heppard, no car gate has ever been on the inside front of the elevator, and the elevator has never stopped immediately when a person takes his finger off the control button during its operation. Heppard explained the elevator generally coasts about three inches before coming to a stop after someone takes his finger off the control button.
As to plaintiff, Heppard stated plaintiff was "very handy" and able to perform all the functions necessary to operate the elevator. (Tr. II, 92-93.) Heppard testified that during the repair efforts, plaintiff stood inside the elevator and operated the up and down buttons, a function no different than plaintiff performed during normal elevator operations. Heppard stated plaintiff did not need to look up while operating the elevator because the instructions to him were audible. According to Heppard, no one else had ever been injured on the elevator during the twenty-eight years he worked at LCI.
 III.
In a decision issued on April 30, 2001, the magistrate recommended judgment for the state. The magistrate found (1) defendant did not breach its duty to plaintiff by having him assist in the elevator repair as an operator, (2) Heppard was a qualified mechanic who was experienced in performing the brake adjustment, and (3) plaintiff had adequate training and experience to safely operate the elevator car. The magistrate further found that even if defendant was negligent, plaintiff's own negligence was greater than defendant's and, accordingly, plaintiff could not prevail in his negligence action. Plaintiff filed objections, and on May 29, 2001, a judge of the Court of Claims overruled plaintiff's objections and accepted the magistrate's recommendation.
On appeal, plaintiff contends defendant had a duty to provide safe working conditions with prudent guidance and training for plaintiff and with safe equipment properly maintained and in good repair. Plaintiff's single assignment of error asserts the manifest weight of the evidence shows (1) he received no training to operate the elevator while it was being repaired, and (2) defendant knew the elevator was defective but failed to warn plaintiff of the danger that the elevator would continue to coast when plaintiff took his finger off the elevator button.
A civil judgment "supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, syllabus.
The essential elements of a negligence claim are: (1) the defendant owed the plaintiff a duty, (2) the defendant breached that duty, and (3) such breach was the proximate cause of plaintiff's injuries. Chambers v. St. Mary's School (1998), 82 Ohio St.3d 563, 565; Strother v. Hutchinson (1981), 67 Ohio St.2d 282, 285. In the context of a custodial relationship between the state and its prisoners, the state owes its inmates a common-law duty of reasonable care and protection from unreasonable risks of physical harm. Woods v. Ohio Dept. of Rehab. 
Corr. (1998), 130 Ohio App.3d 742, 744-745; McCoy v. Engle (1987),42 Ohio App.3d 204 . Reasonable care is that degree of caution and foresight that an ordinarily prudent person would employ in similar circumstances, and includes the duty to exercise reasonable care to prevent an inmate from being injured by a dangerous condition about which the state knows or should know. Woods, supra, at 745; Mayville, supra. The state, however, is not an insurer of inmate safety, and the special relationship between the state and the inmate does not expand or heighten the duty of ordinary reasonable care. Woods, supra. Under those legal principles, the magistrate's decision, adopted by the trial court, is not against the manifest weight of the evidence.
The manifest weight of the evidence does not support plaintiff's assertion he was not trained to operate the elevator. Jago and Heppard, plaintiff's supervisors, testified plaintiff was trained to operate the elevator, with Heppard specifically testifying plaintiff was able to perform all the functions necessary to operate the elevator without difficulty, including on the day of the incident. Moreover, Martin testified the elevator had a very simple push button operation, and plaintiff conceded that operation of the elevator was not complicated. Plaintiff acknowledged he was shown how to operate and stop the elevator, and what to look for in terms of coasting to a stop. Plaintiff had experience in operating the elevator without difficulty for five to six months before the accident, including twenty to thirty minutes just before the accident. He knew at all times no safety gate was inside the front of the elevator, and he knew he had to be looking at the bottom of the elevator to keep his feet inside the elevator car and to prevent injury to them. Ample competent evidence supports the trial court's finding that plaintiff had adequate training and experience to safely operate the elevator car.
The manifest weight of the evidence does not support plaintiff's further assertion he was not warned of the "danger" that the elevator would coast, rather than stop immediately, when he took his finger off the button. Ample competent evidence reflects that prior to the accident plaintiff was aware the elevator coasted, rather than stopped immediately, whenever the control button was released. Indeed, as previously noted, plaintiff admitted he had been instructed how to operate and stop the elevator and what to look for in terms of its coasting. Contrary to plaintiff's testimony that the elevator should stop immediately when the button is released, Jago and Heppard testified the elevator had always coasted and did not immediately stop when the control button was released, including during the five to six-month period plaintiff operated the elevator prior to the accident. Plaintiff's assertion that he was unaware the elevator "coasted" to a stop is not supported by the manifest weight of the evidence.
Contrary to plaintiff's further assertion, the fact the elevator coasted to a stop does not itself render the elevator "dangerous." Martin testified the elevator was designed to coast to a stop to prevent discomfort to its occupants. Moreover, although the elevator may have coasted more on the day of the accident than it usually did, the amount of the elevator's coast did not deviate from any performance standards because, according to Martin, no applicable performance standards govern the coasting of an elevator. Here, the "danger," as plaintiff acknowledged, was that he would fail to keep his feet properly inside the elevator car, and his feet could be injured while the elevator traveled from one floor to another. Plaintiff testified unequivocally he was aware of that danger. Moreover, the testimony at trial indicated the elevator's control buttons were located one to one and one-half feet from the front of the elevator, allowing adequate room so a person would not have to stand at the front edge of the elevator while operating it.
To the extent plaintiff argues defendant breached its duty of care to plaintiff by allowing Heppard to perform the brake adjustment on the elevator, the manifest weight of the evidence does not support plaintiff's assertion. Martin testified that adjustments to the elevator's brakes could be performed by someone with a mechanical background and that such work had been routinely performed in hundreds of locations in Ohio by on-site individuals with mechanical backgrounds. Heppard had extensive mechanical experience, including maintenance and repair of the elevator at issue, and had adjusted the brakes on the elevator at least ten times before plaintiff's accident. Sturgill, who assisted Heppard, was a maintenance mechanic in the prison. In assisting the repair efforts, plaintiff performed no function other than one he normally performed in operating the elevator — pushing the up or down control button and releasing the button to line up the elevator with a designated floor.
Accordingly, the trial court's finding that defendant was not negligent in allowing plaintiff to assist as an elevator operator during the repair of the elevator's brakes is not against the manifest weight of the evidence. Moreover, the manifest weight of the evidence supports the trial court's additional finding that, even if defendant was negligent, plaintiff's comparative negligence in causing his injuries was greater than defendant's negligence.
Pursuant to R.C. 2315.19, plaintiff is barred from recovery if his actions were a greater cause of his injuries than defendant's negligence. Here, the evidence demonstrates plaintiff was aware for at least five to six months that the elevator car did not have a front inside gate, and he knew he had to watch where his feet were located or risk injury as the elevator traveled from floor to floor. During the twenty to thirty minute repair operations, plaintiff knew the elevator was not stopping immediately when he released the control button. According to plaintiff, just prior to the accident, the elevator car was stopped approximately six inches under the third floor landing when he pressed the "up" button again. Given those facts, plaintiff knew he should have been looking at the floor of the elevator to know when to take his finger off the control button and to watch the location of his feet. Instead, plaintiff admitted he looked up, even though he did not need to look up to receive Heppard's verbal instructions. Indeed, plaintiff admitted the only thing different at the time of the accident from the other times he operated the elevator was his failure to pay attention to where his feet were located when the injury occurred. Plaintiff testified the incident was "just an accident" and he blamed no one. As a result, the trial court's finding that plaintiff's own negligence was greater than any negligence of defendant is not against the manifest weight of the evidence.
Accordingly, we overrule plaintiff's single assignment of error and affirm the judgment of the Ohio Court of Claims.
Judgment affirmed.
TYACK, P.J., and LAZARUS, J., concur.