[Cite as *Lorain Medina Rural Elec.  v. GLW Broadband, Inc.*, 2011-Ohio-2708.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| | | |
|---|---|---|
| LORAIN MEDINA RURAL ELECTRIC | | C.A. No.    09CA009623 |
| Appellant | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| GLW BROADBAND, INC. | | ELYRIA MUNICIPAL COURT COUNTY OF LORAIN, OHIO |
| Appellee | | CASE No.    07 CVE 000294 |

DECISION AND JOURNAL ENTRY

Dated: June 6, 2011

CARR, Judge.

{¶1}   Appellant, Lorain Medina Rural Electric Cooperative, Inc., appeals from the judgment of the Elyria Municipal Court.  This Court affirms.

I.

{¶2}   On January 24, 2007, Lorain Medina Electric Cooperative, Inc. (hereafter "LMRE") filed a complaint sounding in breach of contract and negligence against GLW Broadband, Inc. (hereafter "GLW") and James Knapp.  On July 27, 1981, LMRE and GLW entered into a written agreement authorizing GLW to attach its cable television wires to LMRE's utility poles and to maintain the wires pursuant to the standards set forth in the agreement. LMRE alleged that on June 1, 2005, Mr. Knapp struck a low hanging cable television wire belonging to GLW that ran across Wheeler Road with his disker, causing damage to LMRE's utility poles and electric wires.  LMRE settled with Mr. Knapp.  LMRE sought damages in the amount of $2,798.06 from GLW.  GLW answered and entered general denials to the allegations.

The matter proceeded to trial before the Magistrate on January 28, 2008. The Magistrate found in favor of GLW. LMRE filed its objection to the Magistrate's Decision on February 15, 2008, claiming the Magistrate erred in failing to find GLW owned the wire and that the decision was against the manifest weight of the evidence. The trial court overruled LMRE's objections, adopted the decision of the Magistrate, and entered judgment in favor of GLW on June 10, 2009. LMRE filed a timely appeal, raising one assignment of error for review.

II.

**ASSIGNMENT OF ERROR**

"THE COURT ABUSED ITS DISCRETION AS THE COURT'S DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN FAILING TO FIND THAT THE WIRE STRUCK BY JAMES KNAPP WAS A CABLE TELEVISION WIRE OF APPELLEE GLW[.]"

{¶3} LMRE argues that the trial court's judgment is against the weight of the evidence. This Court disagrees.

{¶4} In determining whether the trial court's decision is or is not supported by the manifest weight of the evidence, this court applies the civil manifest weight of the evidence standard set forth in *C.E. Morris Co. v. Foley Const. Co* (1978), 54 Ohio St.2d 279, syllabus, which holds: "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." The Ohio Supreme Court has clarified that:

> "when reviewing a judgment under a manifest-weight-of-the-evidence standard, a court has an obligation to presume that the findings of the trier of fact are correct. *Seasons Coal Co., Inc. v. Cleveland* (1984), 10 Ohio St.3d 77, 80-81. This presumption arises because the trial judge had an opportunity 'to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' Id. at 80. 'A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate

ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not.' Id. at 81." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, at ¶24.

{¶5} LMRE brought a claim for breach of contract and negligence. To prevail on a breach of contract claim, the plaintiff must establish (1) the existence of a binding contract, (2) the plaintiff performed its contractual obligations, (3) the defendant failed to fulfill its contractual obligations, and (4) the plaintiff suffered damages as a result of the breach. *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.* (1996), 115 Ohio App.3d 137, 144. To prevail on a claim of negligence, the plaintiff must establish that GLW (1) owed the plaintiff a duty, (2) breached that duty, and (3) that the breach of the duty proximately caused the plaintiff's injury. *Chambers v. St. Mary's School* (1998), 82 Ohio St.3d 563, 565, reconsideration denied, 83 Ohio St.3d 1453.

{¶6} The sole issue at trial was whether the low hanging wire struck by Mr. Knapp was a cable television wire belonging to GLW. The parties stipulated that GLW is liable to LMRE if the wire struck was a cable television wire. LMRE argues that they presented overwhelming evidence that GLW owned the wire struck by Mr. Knapp's disker, because a state trooper testified that the cause of the crash was a low hanging cable television wire and two of LMRE's employees testified that a cable television line had been attached to the pole in question.

{¶7} Patrolman Jeffrey Fide testified that he was a technical crash investigator and had been employed with the Ohio State Highway Patrol since April 1, 1985. Patrolman Fide testified that he had been employed as an installer with a telephone company for three years in the late 1970's.

{¶8} Patrolman Fide testified that he can distinguish between a television cable, an electric wire, and a telephone wire. He testified that he conducted a crash investigation and concluded that the cause of the accident was a low-hanging cable wire going across Wheeler

Road that Mr. Knapp's disker struck, which subsequently pulled down the utility pole. Patrolman Fide testified that he determined the snagged wire was a cable television wire based on his knowledge that cable lines start to sag over the years and because he saw two wires, neither of which was the telephone line for the area.

{¶9} Mr. Marty Plas, a lineman for LMRE, testified that he cut the cable television wire at the scene of the accident to begin clearing the road. He testified he knew it was a cable wire because it was below LMRE's electric wire and the electric wires are always the highest wire. He testified that a telephone wire would also be below LMRE's electric wire. Mr. Plas then testified that a telephone line was running across the road between the poles involved in the accident, but then claimed he meant cable lines and that there were no telephone lines.

{¶10} Mr. Kim Hinkle, the operations manager for LMRE, testified that the location of a guy wire on the secondary pole involved in the accident indicated that a cable television wire was connected to the pole. Mr. Hinkle testified that a hole in the secondary pole indicated that a cable television wire had been attached to the pole at that hole, because there was already a phone and electric wire attached.

{¶11} Mr. Hinkle testified that a telephone wire does not have the strength necessary to pull down a utility pole when struck. He testified a guy wire or the type of cable television wire used on Wheeler Street would bring down a utility pole if struck.

{¶12} Mr. Hinkle testified that the telephone and electric utilities that were present on the pole during trial were there on the day of the accident.

{¶13} Mr. Joel Large, general manager at GLW, testified that there are several types of wires for cable services. He testified that GLW's residential cable wires look similar to

telephone wires. He testified that GLW did not have a cable television wire running across the road connecting the poles in question on the day of the accident.

{¶14} Mr. Large testified that no one along Wheeler Road reported a cable outage the day of the accident. He testified that GLW did not make any repairs to its system as a result of the accident.

{¶15} Mr. Large testified that the homes at 17327 and 17183 Wheeler Road, which were the homes serviced by the affected poles, were not in GLW's computer system. He testified that if the homes were built in 2001, they would be in the computer system if they have ever received cable service from GLW. He testified that there are records of the homes at 17500 and 17757 Wheeler Road receiving cable service from GLW. Mr. Large conceded that there is a cable line running across Wheeler Road that might be servicing an additional two homes at 16713 and 16855 Wheeler Road even though GLW does not have any records of such service. Mr. Large testified that GLW does not have records of all homes receiving cable service if they began receiving the service before GLW started putting addresses in their computer system.

{¶16} Mr. Large testified GLW has no reason to have had cable lines attached to the poles affected. He testified that the two homes serviced by the poles affected are not serviceable by cable television, because the homes are more than 250 feet from the pole. He testified that to service homes that are more than 250 feet away, special equipment is used and the installation costs $2,500. He testified that GLW would not install the cable lines in anticipation of future customers unless a customer requested it and paid for it upfront.

{¶17} Mr. Large testified that he has seen electric and phone wires drilled through poles, creating holes. He testified that a phone wire that had been pulled down would be reattached higher on the pole rather than to the original drilled hole.

{¶18} Ms. Dawn Pufnock, one of two homeowners serviced by the affected pole, testified that she and her neighbors, the Lattimers, built their houses in 2001. She testified that she lost power and phone service the day of the accident. She testified that she was 90% certain that there had never been more than two lines running across the street between the two affected poles. Ms. Pufnock testified that after the poles were put back up, she saw the telephone company come out and fix a wire that had been sagging.

{¶19} Ms. Pufnock testified that her home had never received cable television service. She testified that she had tried to get cable television service in her home at one point, but was told her address could not be serviced. She testified that her home had a satellite dish for a little while and that the Lattimers had a satellite dish on the outside of their home.

{¶20} Based on a review of the record, this Court concludes that there was competent, credible evidence to support the trial court's finding that the wire struck by Mr. Knapp was not a cable television wire owned by GLW. Patrolman Fide and Ms. Pufnock testified that there were only two wires attached to the poles the day of the accident. Mr. Large testified a phone wire, not a cable wire, crosses the road. Ms. Pufnock testified that she lost power and phone service the day of the accident. Ms. Pufnock testified she never had received cable television because her house could not be serviced. Mr. Large testified GLW had no records of providing cable to the homes serviced by the pole, which they would have since the homes were built in 2001. Mr. Large testified there was no reason for GLW to have a cable wire attached to the pole servicing the affected homes, since they had not ever provided service to those homes. Accordingly, the trial court's finding that GLW did not own the wire struck by Mr. Knapp and hence, owed no duty to LMRE and did not fail to fulfill their contractual obligations, was not against the manifest weight of the evidence. LMRE's assignment of error is overruled.

III.

**{¶21}** LMRE's sole assignment of error is overruled. The judgment of the Elyria Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Elyria Municipal Court, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

BELFANCE, P. J.
DICKINSON, J.
CONCUR

APPEARANCES:

SCOTT M. CHRISTOPHEL, Attorney at Law, for Appellant.

JAY C. MARCIE, Attorney at Law, for Appellee.