MIRACLE

v.

OHIO DEPARTMENT OF REHABILITATION AND CORRECTION.

Court of Claims of Ohio.

No. 93–14384.

Decided Feb. 21, 1995.

*Richard F. Swope,* for plaintiff.

*Betty D. Montgomery,* Attorney General, and *Peter E. DeMarco,* Assistant Attorney General, for defendant.

---

DEAN STRAUSBAUGH, Judge.

The court held a trial in this matter upon the sole issue of liability on October 3, 1994, at the Chillicothe Correctional Institution ("CCI"). At the conclusion of trial, the court requested, and the parties later submitted, post-trial briefs in lieu of closing arguments. After considering all of the evidence, the court hereby renders the following decision.

On October 27, 1993, plaintiff, Timothy Miracle, filed this action against defendant, CCI. The incident underlying plaintiff's lawsuit occurred on February 10, 1993, when he sustained personal injuries after engaging in a fight with another inmate by the name of Brian Jordan ("Jordan"). Just one week prior to the fight, plaintiff and Jordan had been transferred from other dorms at CCI to J-dorm in order to participate in a drug offender program sponsored by the institution. Neither plaintiff nor Jordan knew each other personally until they were assigned as bunk mates upon their arrival in J-dorm.

On the evening in question, plaintiff, accompanied by inmate Jamie Naegle, entered the section of J-dorm known as the "32–man tank," where he and Jordan shared a bunk. Jordan had some of his clothing hanging from a clothesline over a register in order to dry. When plaintiff arrived at his bunk, he said something to the effect of "Hey dog, where do you want me to move your clothes." Apparently, Jordan took offense at being referred to as a "dog" by plaintiff and a fight ensued between them. The fight, which started in the 32–man tank, proceeded into what is known as the U-shaped dorm or the dayroom, where several other inmates witnessed the melee. At the conclusion of what could be

called the initial encounter, plaintiff, who had gotten the better of Jordan, retreated to a rest room so that he could clean himself up in an attempt to conceal from the guards the fact that a fight had occurred.

Moments after the initial encounter, Jordan followed plaintiff into the wash-room and cornered him. Before plaintiff could escape, Jordan managed to cut him on the back of the neck with a broken disposable razor. Despite his injuries, plaintiff rushed from the rest room, where he met with inmate Naegle. The two of them attempted to hide in another section of J-dorm, known as the "4-man tank."

In the meantime, Correctional Officer Susan Ferguson, who had heard some loud noises and witnessed two inmates run into the 4-man tank, began to investigate. Ferguson discovered Jordan with blood on his shirt, pretending to sweep the floor with a broom that also had blood on its handle. When she attempted to take the broom from Jordan, he became belligerent and struck out at her with the broom. Correctional Officer Thomas, who had also heard the commotion, arrived on the scene and signaled for help. She then assisted Officer Ferguson in apprehending Jordan. A third correctional officer, Richard Alexander, responded to the distress signal and eventually found plaintiff hiding in the 4-man tank. In the end, both plaintiff and Jordan were handcuffed and sent to the disciplinary control unit for their participation in the fight.

Plaintiff's claims in this case are premised upon a theory of negligence. More specifically, plaintiff alleges that defendant acted negligently by assigning him to a bunk above Jordan and by failing to provide adequate supervision of J-dorm. Finally, plaintiff maintains that inmates should not be permitted to have disposable razors. Defendant, on the other hand, denies any liability to plaintiff. In particular, defendant asserts that it did not have notice of any problems between plaintiff and Jordan and that it properly supervised J-dorm. Last, defendant posits that it is perfectly consistent with the institution's procedures, as well as the applicable standard of care, to allow inmates in medium security prisons to use disposable plastic razors.

In order to prevail under a theory of negligence, plaintiff must prove by a preponderance of the evidence that defendant owed him a duty, the breach of that duty, and proximate causation between the breach and his injuries. *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 21 O.O.3d 177, 423 N.E.2d 467. Ohio law imposes a duty of reasonable care upon the state to provide for its prisoners' health, care, and well-being. *Clemets v. Heston* (1985), 20 Ohio App.3d 132, 136, 20 OBR 166, 169, 485 N.E.2d 287, 291. However, the state is not the insurer of

inmate safety. See *Williams v. Ohio Dept. of Rehab. & Corr.* (1991), 61 Ohio Misc.2d 699, 702, 583 N.E.2d 1129, 1132. Accordingly, the question for the court is whether CCI breached its duty of reasonable care under the circumstances of this case.

The law is well settled in Ohio that the state is not liable for the intentional attack on one inmate by another inmate unless there is adequate notice of an impending assault. See *Baker v. State* (1986), 28 Ohio App.3d 99, 28 OBR 142, 502 N.E.2d 261; *Williams v. S. Ohio Correctional Facility* (1990), 67 Ohio App.3d 517, 587 N.E.2d 870; *Belcher v. Ohio Dept. of Rehab. & Corr.* (1991), 61 Ohio Misc.2d 696, 583 N.E.2d 1128. Plaintiff testified that he gave CCI notice of his concerns for his safety by sending at least two inter-office communications, also known as "kites," to the appropriate CCI administrators. However, plaintiff never introduced these alleged kites into evidence at trial. Plaintiff further testified that he spoke with some of the correctional officers regarding his concerns about Jordan. Ironically, he also testified that he had only personally met Jordan one week prior to the fight, that Jordan had never threatened him, that he and Jordan had neither good words nor bad words for one another, and that he was surprised when Jordan attacked him. In addition, inmate Naegle testified that he did not know of any problems between plaintiff and Jordan. Accordingly, the court finds that CCI did not have notice of a potential fight between plaintiff and Jordan. Therefore, CCI did not deviate from the standard of reasonable care by assigning plaintiff and Jordan to the same bunk.

In support of his argument that defendant inadequately supervised J-dorm, plaintiff cites Section 4170 of the American Corrections Association Standards, Ohio Adm.Code 5120–9–04, and R.C. 2921.44(C)(1) through (5). American Corrections Association Standards Section 4170 provides that: "Correctional officers posts [be] located in or immediately adjacent to inmate living areas to permit officers to hear and respond promptly to emergency situations." Ohio Adm.Code 5120–9–04 states, in part, that "[i]nmates shall be subject to reasonable and appropriate supervision by employees of the department of rehabilitation and correction." Finally, R.C. 2921.44(C)(3) and (5) read *in pari materia* that "[n]o officer having charge of a detention facility, shall negligently * * * [f]ail to control an unruly prisoner, or prevent intimidation of or physical harm to a prisoner by another; [or] [f]ail to observe any lawful and reasonable regulation for the management of the detention facility." Even if these authorities are considered as binding upon defendant and as requisites of the standard of reasonable care, the court finds that plaintiff has failed to prove, by a preponderance of the evidence, any breach of duty by defendant.

■ Specifically, the court finds that Officers Ferguson and Thomas were positioned at a desk in the middle of J-dorm, which is directly in or immediately adjacent to the inmates' living areas, depending upon one's perspective. Furthermore, Officers Ferguson and Thomas were in a position to hear and promptly respond to any emergency situation that might arise. For example, in the instant case, both plaintiff and Jordan testified that they actively attempted to conceal the fight from the guards for fear that they would be disciplined and removed from the drug offender program. Despite their efforts, Officers Ferguson and Thomas were able to discover that the fight had occurred and moved them from the general population of J-dorm to defendant's disciplinary control unit. Accordingly, the court finds that the inmates in J-dorm, including plaintiff, were reasonably and appropriately supervised by defendant's employees. Moreover, the court further finds that defendant's employees did not fail to observe any CCI regulation for the management of the prison which, in turn, caused plaintiff's injury. Rather, the intentional acts of plaintiff and Jordan were the sole proximate causes of plaintiff's injury.

■ Finally, plaintiff's argument that allowing disposable razors at CCI caused plaintiff's injury is also without merit. Plaintiff failed to provide the court with any persuasive evidence that allowing inmates in a medium security prison, like CCI, to have access to disposable razors is a breach of the standard of reasonable care. Moreover, the intentional acts of plaintiff and Jordan, not any act, omission, or policy by defendant, were the sole proximate cause of plaintiff's injury under the facts of this case.

Consequently, the court finds that plaintiff did not prove his claim by a preponderance of the evidence. Therefore, judgment shall be rendered for defendant.

*Judgment for defendant.*