OPINION
Jeri Jackson, plaintiff-appellant, appeals a judgment of the Court of Claims of Ohio finding defendant-appellee, Ohio Department of Rehabilitation and Correction ("ODRC"), not liable of negligence.
Appellant and Dean Geldrich were inmates at the North Central Correctional Institution ("NCCI") in Marion, Ohio, which is operated by ODRC. Both appellant and Geldrich participated in an art program at NCCI. James Miracle, a correctional officer at NCCI, was in charge of the area known as Crawford C and D where appellant was housed. On June 15, 1996, Geldrich arrived at Crawford C and D and complained to Miracle that appellant had a paintbrush that belonged to him. Miracle walked back to appellant's bunk to ask him about the paintbrush. Appellant alleges that Miracle allowed Geldrich to follow him into appellant's dormitory and threaten appellant with physical violence. Miracle denies that he let Geldrich enter appellant's dormitory. On the morning of June 16, 1996, Geldrich again approached appellant and threatened him. Later that day, in the recreation yard at NCCI, Geldrich attacked appellant with a "shank," a homemade prison knife, and stabbed him in the right hand. Appellant eventually gained control of the shank and stabbed Geldrich.
On August 31, 1999, appellant filed a complaint against ODRC. Appellant alleged that ODRC was negligent in allowing Geldrich to enter his dormitory, against the rules and regulations of NCCI, and threaten him. Appellant also alleged that ODRC was negligent in failing to have an adequate number of guards on duty in the yard and in permitting Geldrich to be near him knowing Geldrich had threatened him the previous day.
A trial was conducted before a magistrate in the Court of Claims, and numerous witnesses testified. On August 31, 1999, the magistrate rendered a decision in favor of ODRC. The magistrate found that ODRC did not have any notice or knowledge of the previous threats made by Geldrich toward appellant. The magistrate also found that while Miracle had knowledge of Geldrich's oral threat on June 16, 1998, and did violate prison rules by allowing Geldrich to enter appellant's dormitory, these incidents did not constitute adequate notice to ODRC of an impending assault. With regard to appellant's claim that ODRC failed to act properly by allowing the assault to occur, the magistrate found that appellant failed to establish a violation of prison rules. The magistrate also found that even if the correctional officers were required to be in the area where the assault occurred, they could not have prevented it due to the swiftness in which the assault occurred. Appellant filed objections to the magistrate's decision with the Court of Claims, which were overruled. Appellant appeals the court's judgment, which adopted the magistrate's decision, asserting the following assignments of error:
ASSIGNMENT OF ERROR NO. 1:
 THE MAGISTRATE AND THE TRIAL COURT ERRED IN FINDING DEFENDANTS-APPELLEES DID NOT HAVE NOTICE OF THE DANGER OF ATTACK ON PLAINTIFF-APPELLANT.
ASSIGNMENT OF ERROR NO. 2:
 THE MAGISTRATE AND THE TRIAL COURT ERRED AND ABUSED THEIR DISCRETION IN FINDING A LACK OF SECURITY ON THE PRISON YARD WAS NOT A DIRECT AND PROXIMATE CAUSE OF PLAINTIFF-APPELLANT'S INJURIES.
ASSIGNMENT OF ERROR NO. 3:
 THE MAGISTRATE AND THE TRIAL COURT ERRED IN FAILING TO FIND WHEN THE CORRECTIONAL OFFICER PERMITTED GELDRICH TO ENTER THE DORMITORY AND THREATEN PLAINTIFF-APPELLANT, WHEN THERE WAS CLEAR EVIDENCE OF NOTICE OF IMPENDING PHYSICAL INJURY TO PLAINTIFF-APPELLANT WHICH JUSTIFIED SEPARATION AND/OR TRANSFER AND FAILED TO PREVENT GELDRICH FROM BEING IN A POSITION TO ATTACK AND INJURE PLAINTIFF-APPELLANT, WAS NEGLIGENCE.
ASSIGNMENT OF ERROR NO. 4:
 THE JUDGMENT OF THE TRIAL COURT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
We will address appellant's first and third assignments of error together because they are related. In order to establish actionable negligence, a plaintiff must show the existence of a duty, a breach of the duty, and an injury resulting proximately from the breach. Menifee v. Ohio Welding Products, Inc. (1984),15 Ohio St.3d 75, 77. Ohio law imposes a duty of reasonable care upon the state to provide for its prisoners' health, care, and well-being. Clemets v. Heston (1985), 20 Ohio App.3d 132, 136. The determination of what degree of care defendant owed to plaintiff must center on the foreseeability of plaintiff's injuries. Jeffers v. Olexo (1989), 43 Ohio St.3d 140. The extent of the duty will also vary with the circumstances. Clemets, supra. However, the state is not an insurer of inmate safety and owes only the duty of ordinary care to inmates who are foreseeably at risk. McAfee v. Overberg (1977), 51 Ohio Misc. 86.
When one inmate intentionally attacks another inmate, actionable negligence may arise only where there was adequate notice of an impending attack. Baker v. State (1986), 28 Ohio App.3d 99
. Appellant argues that ODRC had notice of the attack because Miracle allowed Geldrich to enter appellant's dorm room and threaten him. No stenographic notes were made of the proceedings before the Court of Claims, but appellant filed a statement of the proceedings pursuant to App.R. 9(C), which contains a summary of the testimony presented at trial. Despite a report filed by Captain Brawley indicating that Miracle admitted he allowed Geldrich into the area where appellant was located, Miracle denied that he allowed Geldrich into appellant's dorm room. On cross-examination, Miracle testified that Geldrich never got close enough to threaten appellant, although he testified on direct that he did not allow Geldrich into the dormitory area.
Keith Cardell, an inmate at NCCI, testified that Miracle allowed Geldrich to confront appellant. Cardell stated that Geldrich said to appellant, "I'm going to kill you, you black bitch." He testified that after Geldrich made these statements, Miracle told him to leave. Cardell also stated that at breakfast on the morning of the attack, Geldrich told appellant that he was going to cut his eyes out. Another inmate, Terry Ross, testified that Miracle allowed Geldrich into appellant's cubicle and that he heard Geldrich say to appellant, "If I don't get it, I'm going to cut your heart out, I'll kill you." He stated that he had heard the two argue two or three days before the incident, but there was no pat down of either of them.
Appellant testified that Miracle allowed Geldrich to come back to his cubicle and that Geldrich told him that if he did not get his paintbrush back, he would "f_ck up" his painting. Appellant stated that Miracle heard this, patted down Geldrich, and told him to leave. Appellant also testified that at breakfast the next morning Geldrich approached appellant and told him that he was going to cut his eyes out. At trial, Geldrich admitted that Miracle allowed him to enter appellant's dormitory where he and appellant preceded to get into an argument. Geldrich testified that Miracle then came back and patted him down in a hallway. Geldrich stated that he could not recall whether he threatened appellant at that time but admitted that he threatened him at breakfast the next morning.
With regard to ODRC's notice of the threats made by Geldrich to appellant on the morning of the assault, the trial court found that such acts did not give ODRC adequate notice that an assault would occur. We agree. There was no testimony that any correctional officers or any other NCCI officials heard the threats or were made aware of the threats at any time prior to the assault. Under such circumstances, without any knowledge whatsoever of the threats, it would not be possible for ODRC to have sufficient notice.
With regard to ODRC's notice of Miracle allowing Geldrich into appellant's dormitory, the trial court found that Geldrich did enter appellant's dorm and threaten him. The trial court found Miracle's testimony unconvincing and determined that Miracle violated prison rules by allowing Geldrich to enter appellant's cubicle. However, the trial court determined that this incident was insufficient to find adequate notice of the impending assault on behalf of ODRC, relying on our decision inBaker, supra. In Baker, an inmate argued that prison guards were negligent in failing to place him in protective custody after he expressed his fear of being assaulted by another inmate. However, we found that the correctional facility could not be found negligent because the inmate did not specifically request protective custody or directly express his fear of an impending assault. We further found that the inmate made only vague statements that he needed to get off the range or be moved off the range. Despite the fact that the inmate was slapped in the face by another inmate earlier that day, he did not specifically request protective custody. Therefore, we found in Baker that the trial court did not err in holding that the guards did not have adequate notice of an impending assault to be found negligent.
In the present case, appellant failed to file a complaint with NCCI. Although appellant did claim that he attempted to file a complaint, the fact remains that he did not take any further steps to make certain that a complaint was filed. Appellant also did not express any fear of attack to NCCI officials or correctional officers after Geldrich threatened him in his dormitory. Further, as in Baker, appellant never asked to be placed in protective custody. Appellant's failure to request protective custody undermines his claims against ODRC insofar as it appears that not even he expected any further retaliation by Geldrich. We agree with the trial court that ODRC's knowledge of a single verbal threat made by Geldrich the day before the attack, without any expression of fear or request for segregation by appellant, does not constitute adequate notice to find ODRC negligent for the subsequent attack. Therefore, appellant's first and third assignments of error are overruled.
Appellant argues in his second assignment of error that the trial court erred in finding that a lack of security in the prison yard was not a direct and proximate cause of his injuries. The trial court concluded that, under the circumstances, security was adequate and that appellant failed to establish any violation of prison rules. The trial court also noted that even if the correctional officers would have been required to be in the area of the assault, they could not have prevented it because the incident happened so quickly. This court will not reverse that finding if it is supported by competent, credible evidence. C.E.Morris Co. v. Foley Construction Co. (1978), 54 Ohio St.2d 279.
Cardell testified that before the fight, appellant and Geldrich screamed at each other and that there were no guards in the area when the attack occurred. Ross testified that at the time of the attack he was walking with Cardell to the baseball diamond in the yard and heard Geldrich say to appellant, "If I don't get my paintbrush . . ." Appellant testified that on the morning of the attack, he was reaching down to adjust a piece of exercise equipment in the yard when Geldrich suddenly appeared beside him and, without speaking, attempted to stab him with the shank. He also stated that during the physical struggle between the two, there were no correctional officers in the yard.
Although appellant, Cardell, and Ross all testified that they did not see any correctional officers monitoring the immediate exercise area at the time of the assault, we find that the trial court did not err in finding that ODRC provided adequate supervision for the complex. Specifically, there is credible evidence that there were correctional officers in the vicinity of the yard at the time of the attack. Cardell testified that correctional officers were near a baseball diamond fifty yards from where the incident took place. In Miller v. Ohio Dept. ofRehab. and Corr. (1995), 73 Ohio Misc.2d 4, the court found that it was reasonable for guards to be approximately fifty to sixty yards from a weight-lifting area where an assault occurred because at that distance the guards were in a position to respond to any emergency situation that may arise. See, also, Miracle v. OhioDept. of Rehab. Corr. (1995), 69 Ohio Misc.2d 18. Appellant also has not pointed to any formal or written rule that NCCI guards violated. See Baker, supra, at 100. Further, appellant's testimony, that Geldrich suddenly appeared beside him and he did not hear Geldrich say anything to him before the attack, supports the trial court's finding that the attack was quick and unexpected and that the guards would not have been able to prevent the assault. Therefore, we find that there was competent, credible evidence that the inmates at NCCI, including appellant, were reasonably and appropriately supervised at the time of the attack. Appellant's second assignment of error is overruled.
Appellant argues in his fourth assignment of error that the trial court's decision was against the manifest weight of the evidence. In order for an appellate court to reverse a judgment of conviction as against the manifest weight of the evidence, it must disagree with the factfinder's resolution of conflicting testimony. State v. Thompkins (1997), 78 Ohio St.3d 380, 387. Therefore, the court, in examining the evidence offered at trial, sits as the "thirteenth juror." Id. This does not allow the reviewing court to lightly substitute its judgment for that of the jury. Reversal may only be had when:
 "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." [Id., quoting State v. Martin (1983), 20 Ohio App.3d 172, 175.]
With regard to the previous assignments of error, we have already examined the testimony presented at the hearing. After a review of the record, we find that the court did not create such a manifest miscarriage of justice that the decision of the Court of Claims must be reversed and a new trial ordered. Therefore, appellant's fourth assignment of error is overruled.
Accordingly, appellant's four assignments of error are overruled, and the judgment of the Court of Claims of Ohio is affirmed.
Judgment affirmed.
BOWMAN, P.J., and DESHLER, J., concur.